**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VERNITA MIRACLE-POND and SAMANTHA PARAF, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SHUTTERFLY, INC., <br><br> Defendant. | Civil Action No. 1:19-cv-4722 <br><br> District Judge Mary M. Rowland |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO COMPEL ARBITRATION AND STAY LITIGATION**

MAYER BROWN LLP
Lauren R. Goldman
Michael Rayfield*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com
mrayfield@mayerbrown.com

John Nadolenco*
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Matthew D. Provance
71 S. Wacker Drive
Chicago, IL 60606
mprovance@mayerbrown.com
Telephone: (312) 782-0600

*Attorneys for Defendant Shutterfly, Inc.*
\**pro hac vice* application to be filed

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1
BACKGROUND ..................................................................................................................... 1
    A.    Ms. Miracle-Pond Agrees To Arbitrate ................................................................ 1
    B.    Shutterfly's Arbitration Provision Includes Features Designed To Make Arbitration Convenient For Consumers ................................................................ 4
    C.    Ms. Miracle-Pond Sues Shutterfly Based On Her Use Of Shutterfly's Services, Notwithstanding Her Arbitration Agreement .......................................... 5
ARGUMENT ............................................................................................................................ 6
I.    The FAA Requires Enforcement Of Shutterfly's Arbitration Provision ........................... 6
    A.    Ms. Miracle-Pond Entered into a Valid Arbitration Agreement ........................... 7
    B.    Ms. Miracle-Pond's Claims Fall Within The Scope Of Her Arbitration Agreement ............................................................................................................ 11
    C.    Any Dispute By Ms. Miracle-Pond Regarding Whether Her Claims Are Subject To Arbitration Or The Enforceability Of Shutterfly's Arbitration Provision Must Be Decided By The Arbitrator ..................................................... 12
II.    The FAA Requires A Stay Of This Action Pending Arbitration .................................... 13
CONCLUSION ........................................................................................................................ 14

i

**TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. United States*,
 2009 WL 2060089 (S.D. Ill. July 14, 2009) ................................................................................7

*Allied-Bruce Terminix Cos. v. Dobson*,
 513 U.S. 265 (1995)....................................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011).........................................................................................................6, 11, 13

*Bank One, N.A. v. Coates*,
 125 F. Supp. 2d 819 (S.D. Miss. 2001).......................................................................................9

*Bauer v. Qwest Commc'ns Co.*,
 743 F.3d 221 (7th Cir. 2014) .....................................................................................................10

*Boomer v. AT&T Corp.*,
 309 F.3d 404 (7th Cir. 2002) .....................................................................................................10

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015) ...................................................................................................13

*Carbajal v. H & R Block Tax Servs., Inc.*,
 372 F.3d 903 (7th Cir. 2004) .....................................................................................................11

*Carlton at the Lake, Inc. v. Barber*,
 928 N.E.2d 1266 (Ill. App. Ct. 2010) ........................................................................................10

*Carroll v. Stryker Corp.*,
 658 F.3d 675 (7th Cir. 2011) .......................................................................................................9

*Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*,
 2016 WL 4036754 (N.D. Ill. July 28, 2016).............................................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
 265 F. Supp. 2d 385 (S.D.N.Y. 2003).........................................................................................9

*Epic Sys. Corp. v. Lewis*,
 138 S. Ct. 1612 (2018)...............................................................................................................13

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................................................ 7

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
    2018 WL 2933608 (N.D. Ill. June 12, 2018) ........................................................................... 8

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................................................................ 14

*Gore v. Alltel Commc'ns, LLC*,
    666 F.3d 1027 (7th Cir. 2012) ........................................................................................... 7, 11

*Gupta v. Morgan Stanley Smith Barney, LLC*,
    934 F.3d 705 (7th Cir. Aug. 19, 2019) .................................................................................. 10

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    575 F. Supp. 2d 696 (D. Md. 2008) ........................................................................................ 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ............................................................................................................ 12

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ................................................................................................................ 12

*Hutcherson v. Sears Roebuck & Co.*,
    793 N.E.2d 886 (Ill. App. Ct. 2003) ................................................................................. 9, 11

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) .................................................................................................. 9

*Info. Sys. Audit & Control Ass'n v. Telecomm. Sys., Inc.*,
    2017 WL 2720433 (N.D. Ill. June. 23, 2017) ....................................................................... 13

*Johnson v. Uber Techs., Inc.*,
    2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ......................................................................... 8

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017) ..................................................................................................... 7, 13

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) .......................................................................................................... 11

*Larsen v. Citibank FSB*,
    871 F.3d 1295 (11th Cir. 2017) .............................................................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................................. 11

*In re Online Travel Co.(OTC) Hotel Booking Antitrust Litig.*,
   953 F. Supp. 2d 713 (N.D. Tex. 2013) ................................................................................9

*Ragan v. AT&T Corp.*,
   824 N.E.2d 1183 (Ill. App. Ct. 2005) ................................................................................10

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ......................................................................................................12, 13

*Rosen v. SCIL, LLC*,
   799 N.E.2d 488 (Ill. App. Ct. 2003) ....................................................................................9

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) .............................................................................................8

*Sherman v. AT&T Inc.*,
   2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ......................................................................9

*United States v. Borrero*,
   771 F.3d 973 (7th Cir. 2014) ...............................................................................................7

*Valle v. ATM Nat'l, LLC*,
   2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ........................................................................9

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) ...................................................................................8

*Williams v. TCF Nat'l Bank*,
   2013 WL 708123 (N.D. Ill. Feb. 26, 2013) .........................................................................9

**Statutes**

9 U.S.C. § 2 .................................................................................................................................6, 7

9 U.S.C. § 3 .................................................................................................................................14

**Other Authorities**

Restatement (Second) of Contracts § 69(1) (1981) .....................................................................10

## INTRODUCTION

Plaintiff Vernita Miracle-Pond has filed her claims against defendant Shutterfly, Inc. ("Shutterfly") in the wrong forum. Ms. Miracle-Pond agreed to arbitrate disputes relating to the Shutterfly service, such as the one raised in this action, on an individual basis. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires Ms. Miracle-Pond to honor that obligation.

Despite her obligation, Ms. Miracle-Pond and Samantha Paraf (together, "Plaintiffs") have sued Shutterfly under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Plaintiffs allege that Shutterfly violated BIPA by "collecting, storing, and using Plaintiffs' . . . biometric identifiers and biometric information . . . without informed written consent." Compl. ¶ 1. There is one key difference between the two Plaintiffs: Ms. Miracle-Pond is a Shutterfly user with a Shutterfly account, whereas Ms. Paraf alleges that she is not a Shutterfly user and has never had a Shutterfly account. Compl. ¶¶ 7-8. As a user of Shutterfly, Ms. Miracle-Pond has agreed to Shutterfly's terms of service, including the provision requiring individual arbitration of her claims. Accordingly, Shutterfly moves for an order compelling Ms. Miracle-Pond to arbitrate her claims in accordance with her arbitration agreement and staying further litigation of her claims pending the outcome.

## BACKGROUND

**A.    Ms. Miracle-Pond Agrees To Arbitrate.**

Ms. Miracle-Pond alleges that she "has a Shutterfly account." Compl. ¶ 7. Shutterfly's records confirm that Ms. Miracle-Pond registered for her Shutterfly account using the Shutterfly Android mobile app in August 2014. Decl. of Michael Landreth ¶ 3. During that registration process, the app displayed a page on Ms. Miracle-Pond's Android device. *Id.* ¶ 4 & Ex. 1. To proceed past that page, Ms. Miracle-Pond was required to click a button that said "Accept" below the following statement: "By tapping 'Accept', you agree to use the Shutterfly for

1

Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use." *Id.* The next sentences directed the user to the Terms of Use: "To view a copy of the Terms of Use from your phone, tap the 'View Terms of Use' button below. You may also view the Terms of Use and Privacy Policy at shutterfly.com." *Id.* Directly underneath that text was a button that read "View Terms of Use." *Id.* When pressed, that button took the user to a webpage displaying Shutterfly's Terms of Use ("Terms"). *Id.* ¶ 5 & Ex. 1.

The very first section of Shutterfly's Terms reiterated that Ms. Miracle-Pond was accepting those Terms:

> Please read these Terms of Use ("Terms") carefully. They contain the legal terms and conditions that govern your use of and access to our websites, mobile sites, and mobile applications (collectively, our "Sites and Apps"), as well as our provision of products and services. Certain services, promotions and features may have additional terms and conditions, and those additional terms and conditions are incorporated herein by reference.
>
> By visiting any of our Sites and Apps, you are signifying your assent to these Terms and our Privacy Policy, which is incorporated herein by reference. Any products ordered or services used through any of our Sites and Apps are also governed by these Terms.

*Id.* Ex. 2 at 1.

That same section further notified Ms. Miracle Pond that Shutterfly "may revise these Terms from time to time by posting a revised version." *Id.* The Terms explained: YOUR CONTINUED USE OF ANY OF THE SITES AND APPS AFTER WE POST ANY CHANGES WILL CONSTITUTE YOUR ACCEPTANCE OF SUCH CHANGES." *Id.* (capitalization in original). Further, the Terms noted, "BY ORDERING PRODUCTS OR USING SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ AND REVIEWED THESE TERMS IN THEIR ENTIRETY, YOU AGREE TO THESE TERMS AND THE PRIVACY POLICY AND THESE TERMS CONSTITUTE BINDING AND ENFORCEABLE OBLIGATIONS ON YOU." *Id.* (capitalization in original). Shutterfly's records indicate that Ms. Miracle-Pond has

actively used Shutterfly's service since signing up for an account, including to order Shutterfly products and services. According to Shutterfly's records, she uploaded nearly 300 photographs to her account between August 2014 and December 2018, ordered products on December 6, 2015, December 11, 2017, October 24, 2018, and December 8, 2018, and accessed her account as recently as April 22, 2019. *Id.* ¶ 3.

Each version of Shutterfly's Terms since May 2015, including the most recent revision in September 2019, has included an arbitration provision. Landreth Decl. ¶ 9 & Ex. 3 § 20 (arbitration provision in 2015 Terms); *id.* Ex. 4 § 22 (arbitration provision in 2019 Terms). In each version, the preamble of the Terms has stated in all capital letters: "NOTE: THIS TERMS OF USE CONTAINS AN ARBITRATION AND CLASS ACTION WAIVER PROVISION IN THE 'ARBITRATION' SECTION BELOW THAT AFFECTS YOUR RIGHTS UNDER THIS TERMS OF USE AND WITH RESPECT TO ANY DISPUTE BETWEEN YOU AND US AND OUR AFFILIATES." *Id.* Ex. 3 at 1 (2015 Terms); *id.* Ex. 4 at 1 (2019 Terms). The arbitration clause itself states that "you and Shutterfly agree that any dispute, claim or controversy arising out of or relating in any way to the Shutterfly service, these Terms of Use and this Arbitration Agreement, shall be determined by binding arbitration." *Id.* Ex. 3 § 20 (2015 Terms); *id.* Ex. 4 § 22 (2019 Terms). The clause also explains that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration agreement." *Id.* § 20 (2015 Terms); *id.* Ex. 4 § 22 (2019 Terms).

In addition, the arbitration clause explains that arbitration will take place on an individual basis. It states that "you and Shutterfly are each waiving the right to a trial by jury or to participate in a class action," and reiterates that "YOU AND SHUTTERFLY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS

3

INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING," and that the arbitrator may not "preside over any form of a representative or class proceeding." *Id.* § 20 (2015 Terms); *id.* Ex. 4 § 22 (2019 Terms)

In early September 2019, Shutterfly sent an email notice to its users, including Ms. Miracle-Pond, of the most recent update to the Terms. Decl. of Mike Berry ¶ 2 & Ex. 1. The email summarized the changes, including the fact that Shutterfly updated the Terms to "clarify [users'] legal rights in the event of a dispute and how disputes will be resolved in arbitration"; provided a link to view the full Terms; informed users that the new updates had taken effect; and advised users as follows: "If you do not contact us to close your account by October 1, 2019, or otherwise continue to use our websites and/or mobile applications, you accept these updated terms." *Id*. Shutterfly's records indicate that Ms. Miracle-Pond opened that email on September 8, 2019. *Id.* ¶ 3. As of October 2, 2019, according to Shutterfly's records, Ms. Miracle-Pond's Shutterfly account remains open. Landreth Decl. ¶ 10.

> **B.    Shutterfly's Arbitration Provision Includes Features Designed To Make Arbitration Convenient For Consumers.**

Shutterfly's arbitration provision sets forth procedures that are tailored for the needs of consumers (*Id.* § 20 (2015 Terms); *id.* Ex. 4 § 22 (2019 Terms)):

- **Flexible consumer procedures:** Arbitration will be conducted under the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), which the AAA designed with consumers in mind.

- **Cost-free arbitration**: For claims of $10,000 or less, "Shutterfly will promptly reimburse you for your payment of the filing fee." And under the AAA's Consumer Arbitration Rules, Shutterfly is responsible for all of the other costs and fees of

4

arbitration. *See* Decl. of Matthew D. Provance ("Provance Decl.") Ex. 1 at 33.[1]

- **$1,000 minimum award:** If the arbitrator issues an award in favor of a consumer that is greater than the "last written settlement offer made before an arbitrator was selected (or if Shutterfly did not make a settlement offer before an arbitrator was selected)," the consumer will receive $1,000 rather than any smaller arbitral award.

- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, the consumer has the exclusive right to choose whether the arbitrator will conduct an in-person or telephonic hearing, or a "desk" arbitration in which the "arbitration will be conducted solely on the basis of documents submitted to the arbitrator."

- **Convenient location:** The arbitration hearing will take place "in the county of [the consumer's] residence" unless the parties agree otherwise.

- **Small claims court option:** Either party may bring a claim in small claims court as an alternative to arbitration.

- **No confidentiality requirement:** Either party may publicly disclose the arbitration and its result.

- **Full individual remedies:** The arbitrator can award any form of relief on an individualized basis that a court could award.

- **Right to a written decision**: The arbitrator must "issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award it based."

These features ensure that consumers have simple, fair, and cost-free procedures for pursuing their claims against Shutterfly.

### C. Ms. Miracle-Pond Sues Shutterfly Based On Her Use Of Shutterfly's Services, Notwithstanding Her Arbitration Agreement.

On June 11, 2019, Plaintiffs filed this putative class action in Illinois state court (Dkt. 1-1), and on July 12, 2019, Shutterfly removed it to this Court (Dkt. 1). The claims in this case are alleged to originate directly from Ms. Miracle-Pond's use of Shutterfly's services. The

---

[1] For claims of more than $10,000, the consumer's only cost is the $200 filing fee. Provance Decl. Ex. 1 at 33. The remaining costs and fees of arbitration are allocated to the business regardless of the amount of the claim, and the arbitrator may not reallocate them, except if the arbitrator "determin[es] that [a] party's claim or counterclaim was filed for purposes of harassment or is patently frivolous." *Id.* Ex. 1 at 28.

5

Complaint alleges that "Miracle-Pond has a Shutterfly account and her face appears in photographs uploaded to Shutterfly within Illinois." Compl. ¶ 7. Plaintiffs allege that when the photos were added, Shutterfly "automatically detected and located Plaintiff[s]' faces, analyzed the geometric data relating to the unique contours of his face [sic] and the distances between their eyes, nose, and ears, and used that data to extract and collect Plaintiffs' scan of face geometry and related data (*i.e.*, their biometric identifiers)." Compl. ¶ 29. Based on these allegations, Plaintiffs contend that Shutterfly violated BIPA (*id.* ¶¶ 39-50) and seek statutory damages, injunctive and other equitable and declaratory relief, litigation expenses and attorneys' fees, and pre- and post-judgment interest on behalf of a putative class of similarly situated persons (*id.* ¶¶ 14-15).

## ARGUMENT

### I. THE FAA REQUIRES ENFORCEMENT OF SHUTTERFLY'S ARBITRATION PROVISION.

Ms. Miracle-Pond's claims against Shutterfly must be arbitrated in accordance with her arbitration agreement, which is enforceable under the FAA.

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346 (quotation marks omitted).

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here. The

6

arbitration provision is in writing. Landreth Decl. Ex. 3 § 20; *id.* Ex. 4 § 22. And the use of an online photo service involves interstate commerce: "[C]ourts have consistently found that use of the Internet necessarily involves interstate communications and therefore constitutes the use of a facility of interstate commerce." *Adams v. United States*, 2009 WL 2060089, at *6 (S.D. Ill. July 14, 2009) (quotation marks omitted); *see also United States v. Borrero*, 771 F.3d 973, 975 (7th Cir. 2014) (recognizing that the Internet is a means of interstate commerce). Indeed, the Supreme Court has explained that the FAA "signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). And the arbitration provision specifies that the "[FAA] governs the interpretation and enforcement of this provision." Landreth Decl. Ex. 3 § 20; *id.* Ex. 4 § 22.

Ms. Miracle-Pond validly agreed to arbitrate disputes with Shutterfly, her claims fall within the scope of her arbitration agreement, and no "grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2) apply to invalidate her agreement.

    **A.    Ms. Miracle-Pond Entered into a Valid Arbitration Agreement.**

Courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether a valid arbitration agreement was formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). But only "generally applicable" contract doctrines apply; state-law rules that "discriminat[e]" against or "disfavor[]" arbitration agreements are preempted by the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). Under those generally applicable principles, Ms. Miracle-Pond validly accepted the arbitration provision in Shutterfly's Terms.

To begin with, when Ms. Miracle-Pond activated her Shutterfly account using the Android mobile application, she clicked the "Accept" button above the statement that "[b]y

7

tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly service in accordance with Shutterfly's Terms of Use," which could be accessed by clicking on the nearby "View Terms of Use" button. Landreth Decl. ¶¶ 4-5 & Ex. 1. Pressing that "Accept" button constituted a binding contract acceptance as a matter of law.

"Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract," and that "[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016) (collecting cases). In "regularly uphold[ing]" the validity of "clickwrap" agreements (*Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)), courts have concluded that making the terms and conditions of an agreement available by hyperlink—as Shutterfly did in the Android application that Ms. Miracle-Pond used—constitutes reasonable notice. *See*, *e.g.*, *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018). Because Shutterfly's "app contained a clear and conspicuous statement that . . . a user agreed to the Terms of Service & Privacy Policy" by clicking a link or pressing a button, a reasonable user who completes that process would understand that he or she has manifested assent to the Terms. *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4-5 (N.D. Ill. Sept. 20, 2018) (enforcing terms in mobile application).

The Terms that Ms. Miracle-Pond accepted specified that she agreed that Shutterfly "may revise these Terms from time to time by posting a revised version," and that she would agree to the then-current version of the Terms by "continu[ing] [to] use" the service or by "order[ing] products after the revised version is posted. Landreth Decl. Ex. 2 at 1. Pursuant to this change-

8

in-terms clause, Shutterfly validly added an arbitration provision to its Terms in May 2015. *Id.* Ex. 3 § 20. Courts in Illinois and elsewhere have confirmed that contract provisions added or revised via commonplace change-in-terms clauses, like the one in Shutterfly's Terms, are fully enforceable. *See*, *e.g.*, *Carroll v. Stryker Corp.*, 658 F.3d 675, 683 (7th Cir. 2011) ("A contract can be modified by future agreement, and [employer's] reservation of the right to modify the pay plan does not make this an illusory contract."); *see also*, *e.g.*, *Williams v. TCF Nat'l Bank*, 2013 WL 708123, at *6, *9 (N.D. Ill. Feb. 26, 2013) (enforcing revised arbitration provision added via change-in-terms clause); *Sherman v. AT&T Inc.*, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012) (same, because "[t]he Court finds that [the plaintiff] agreed to a contract with a change-in-terms-provision"); *Rosen v. SCIL, LLC*, 799 N.E.2d 488, 494 (Ill. App. Ct. 2003) (enforcing arbitration provision added to cardholder agreement, because "[i]f plaintiff did not wish to agree to the new terms in his credit card agreement, he simply should have stopped using the card."); *Hutcherson v. Sears Roebuck & Co.*, 793 N.E.2d 886, 888 (Ill. App. Ct. 2003) (enforcing arbitration provision added via change-in-terms clause).[2]

Moreover, Ms. Miracle-Pond accepted the updated set of Terms and its arbitration provision on multiple occasions and in multiple ways. First, the Terms she accepted specified that "continu[ing] [to] use" the Shutterfly service or "order[ing] products" would constitute assent to the Terms in place at the time of use. Landreth Decl. Ex. 2 at 1. This is exactly what Ms. Miracle-Pond has done. According to Shutterfly's records, she uploaded nearly 300

---

[2] *Accord, e.g.*, *Larsen v. Citibank FSB*, 871 F.3d 1295, 1320 (11th Cir. 2017); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173-74 (5th Cir. 2004); *Valle v. ATM Nat'l, LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015); *In re Online Travel Co.(OTC) Hotel Booking Antitrust Litig.*, 953 F. Supp. 2d 713, 719-20 (N.D. Tex. 2013); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d 696, 707–08 (D. Md. 2008); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385 (S.D.N.Y. 2003); *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 830-32 (S.D. Miss. 2001), *aff'd*, 34 F. App'x 964 (5th Cir. 2002).

photographs to her account between August 2014 and December 2018, placed four orders for products between December 2015 and December 2018, and accessed her account as recently as April 22, 2019. Landreth Decl. ¶ 3.

In addition, the email that Ms. Miracle-Pond received regarding the most recent update to the Terms instructed her to review the updated Terms and stated that "[if] you do not contact us to close your account by October 1, 2019 . . . you accept these updated terms." Berry Decl. Ex. 1. Ms. Miracle-Pond opened this email on September 8, 2019, but did not close her Shutterfly account. Berry Decl. ¶ 3.

Ms. Miracle-Pond thus accepted Shutterfly's arbitration clause in each of three independently sufficient ways: by continuing to use the Shutterfly service after the clause was added; by making additional purchases of Shutterfly products after the clause was added; and by choosing not to close her account after receiving email notice of the clause. In Illinois, as elsewhere, acceptance by "'conduct'" is a valid method of "'indicat[ing] one's] assent'" to a contract. *Bauer v. Qwest Commc'ns Co.*, 743 F.3d 221, 227 (7th Cir. 2014) (quoting *Carlton at the Lake, Inc. v. Barber*, 928 N.E.2d 1266, 1270 (Ill. App. Ct. 2010); *see also* Restatement (Second) of Contracts § 69(1) (1981) (an offeree's "silence and inaction operate as an acceptance" when "because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept"). Having agreed beforehand that these actions would mean acceptance of Shutterfly's updated Terms, Ms. Miracle-Pond chose to engage in them, and thereby validly accepted the revised Terms and their arbitration provision. *See*, *e.g.*, *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, at 13-14 (7th Cir. Aug. 19, 2019) (silence amounted to acceptance of arbitration provision in contract terms); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (same); *Ragan v. AT&T Corp.*, 824 N.E.2d

1183, 1188-89 (Ill. App. Ct. 2005) (same); *Hutcherson*, 793 N.E.2d at 893 (same).

In sum, Ms. Miracle-Pond agreed to arbitrate disputes with Shutterfly.

### B. Ms. Miracle-Pond's Claims Fall Within The Scope Of Her Arbitration Agreement.

Ms. Miracle-Pond's arbitration agreement encompasses her claims in this action. Shutterfly's arbitration provision covers "any dispute, claim or controversy arising out of or relating in any way to the Shutterfly service." Landreth Decl. Ex. 4 § 22. Indeed, as the Seventh Circuit has observed of a similar provision requiring arbitration of "any claim or dispute . . . relating to" the contract or the parties' relationship, "[i]t would be hard to draft a broader [arbitration] clause." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 904-05 (7th Cir. 2004); *see also*, *e.g.*, *Gore*, 666 F.3d at 1036 ("Given our broad reading of 'arising out of and relating to,' we are confident that these claims also fall within the scope of the arbitration clause."). Ms. Miracle-Pond's claims "relat[e] in any way to the Shutterfly service" because she alleges that Shutterfly violated BIPA when, using the service, she uploaded photographs of herself to Shutterfly. *See* Compl. ¶¶ 7, 29, 30. Thus, the plain language of Ms. Miracle-Pond's arbitration agreement covers her claims in this action.

Even if there were "any doubts concerning the scope of arbitrable issues"—and there are none—those doubts would have to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). That is because the FAA requires that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). Thus, in light of the strong federal policy favoring the enforcement of arbitration agreements (*e.g.*, *Concepcion*, 563 U.S. at 346), Ms. Miracle-Pond's arbitration agreement must be interpreted as governing her claims.

11

>   C.   **Any Dispute By Ms. Miracle-Pond Regarding Whether Her Claims Are Subject To Arbitration Or The Enforceability Of Shutterfly's Arbitration Provision Must Be Decided By The Arbitrator.**

To the extent that Ms. Miracle-Pond denies that her arbitration agreement either is enforceable or encompasses her claims in this lawsuit, that dispute must be resolved by the arbitrator.

These "gateway" questions of "arbitrability" normally would be for the Court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). But under the FAA, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The Supreme Court has squarely held that when an arbitration agreement "clearly and unmistakably" contains a "delegation provision"— *i.e.*, a clause delegating "threshold issues" of arbitrability to the arbitrator—"the FAA operates on this additional arbitration agreement just as it does any other." *Jackson*, 561 U.S. at 68-70 & n.1 (internal quotation marks omitted). In other words, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

The delegation clause in Shutterfly's arbitration provision is substantively identical to the one that the Supreme Court enforced in *Jackson*. The agreement in *Jackson* provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." 561 U.S. at 66. Similarly, the Shutterfly arbitration provision here provides that

12

"[a]ll issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration agreement." Landreth Decl. Ex. 4 § 22.[3]

The Supreme Court has held that unless the plaintiff has "challenged the delegation provision specifically," courts "must treat [the delegation clause] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." *Jackson*, 561 U.S. at 72. Thus, the Court should compel arbitration of any contention by Ms. Miracle-Pond that her claims are not arbitrable or that her arbitration agreement is unenforceable.[4]

## II. THE FAA REQUIRES A STAY OF THIS ACTION PENDING ARBITRATION.

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the Act directs the district court to compel arbitration and stay the lawsuit pending

---

[3] The AAA rules incorporated by the Shutterfly arbitration provision specify that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Provance Decl. Ex. 1 § R-14(a). Courts have held that arbitration agreements that incorporate the AAA rules clearly and unmistakably delegate issues of arbitrability to the arbitrator. *See*, *e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (agreeing with "the vast majority of circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent" to "agree[] to arbitrate arbitrability"); *Info. Sys. Audit & Control Ass'n v. Telecomm. Sys., Inc.*, 2017 WL 2720433, at *2 (N.D. Ill. June. 23, 2017) ("Although the Seventh Circuit has yet to address the issue, the vast majority of courts have held that an agreement to arbitrate in accordance with the AAA's Rules clearly indicates the parties' intention to let an arbitrator determine whether their dispute is arbitrable."); *Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, 2016 WL 4036754, at *6 (N.D. Ill. July 28, 2016) ("[D]istrict courts in this circuit (and courts of appeals in other circuits . . .) have consistently held that a clause requiring arbitration according to the AAA Rules requires the arbitrator to resolve arbitrability disputes").

[4] In any event, any contention by Ms. Miracle-Pond that her arbitration agreement is unenforceable because it requires arbitration on an individual basis lacks merit. The Supreme Court has reiterated that the FAA preempts state-law rules that declare an arbitration agreement "unenforceable *just because it requires bilateral arbitration*." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) (emphasis in original). A rule that "attack[s] (only) the individualized nature of the arbitration proceedings . . . seeks to interfere with one of arbitration's fundamental attributes" and thus cannot be squared with the FAA. *Id.* at 1622; *see also*, *e.g.*, *Kindred Nursing Ctrs. L.P. v. Clark*, 137 S. Ct. 1421, 1426 (2017); *Concepcion*, 563 U.S. at 351.

13

the resolution of arbitration. *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3").

## CONCLUSION

Shutterfly respectfully requests that the Court (i) compel Ms. Miracle-Pond to arbitrate her claims on an individual basis; and (ii) stay this action pending the outcome of any arbitration.

DATED:  October 3, 2019                         Respectfully submitted,

By: */s/ Lauren R. Goldman*

MAYER BROWN LLP
Lauren R. Goldman
Michael Rayfield*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com
mrayfield@mayerbrown.com

John Nadolenco*
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Matthew D. Provance
71 S. Wacker Drive
Chicago, IL 60606
mprovance@mayerbrown.com
Telephone: (312) 782-0600

*Attorneys for Defendant Shutterfly, Inc.*
**pro hac vice* application to be filed*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October 2019, a copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Compel Arbitration and Stay Litigation was filed electronically and served by mail on anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF System.

></br>*/s/ Lauren R. Goldman* _____
Lauren R. Goldman
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 506-2373
Fax: (212) 849-5973
Email: lrgoldman@mayerbrown.com