UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| VERNITA MIRACLE-POND and SAMANTHA PARAF, individually and on behalf of all others similarly situated, | Civil Action No. 1:19-cv-4722 |
| Plaintiffs, | District Judge Mary M. Rowland |
| v. | |
| SHUTTERFLY, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................................1

BACKGROUND ....................................................................................................................................2

ARGUMENT ..........................................................................................................................................5

I.     Shutterfly's Interpretation of BIPA Contradicts Both the Statutory Language and Legislative Intent ....................................................................................................................5

          A.     Scans of Face Geometry Derived From Photographs Are Biometric Identifiers Under The Plain Language of BIPA ..................................................................6

          B.     The Legislative History of BIPA Provides No Support for Shutterfly's Position....9

          C.     Shutterfly Offers No Reason for This Court to Diverge From the Unanimous Holdings of District Courts on This Issue.................................................................9

II.     Plaintiffs Sufficiently Allege Shutterfly Profits From Its Facial Recognition Technology. ..........................................................................................................................12

CONCLUSION.....................................................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abrahamson v. Ill. Dep't of Prof'l Regulation,*
 153 Ill. 2d 76 (1992) .................................................................................................... 5

*Adams v. City of Indianapolis,*
 742 F.3d 720 (7th Cir. 2014) ..................................................................................... 12

*Austin v. American Ass'n of Neurological Surgeons*,
 253 F.3d 967, 971 (7th Cir.2001) .............................................................................. 13

*Brass v. Dunlap*, No. 09 CV 6873,
 2012 WL 5964591 (N.D. Ill. Nov. 28, 2012) ............................................................ 12

*Conner v. Bd. of Trustees for Univ. of Illinois*, No. 19 CV 846,
 2019 WL 5179625 (N.D. Ill. Oct. 15, 2019) .............................................................. 12

*DeLuna v. Burciaga*,
 223 Ill. 2d 49 (2006) .................................................................................................... 5

*Doctors Nursing & Rehab. Ctr., LLC v. Norwood*, No. 1:16-CV-10255,
 2017 WL 2461544 (N.D. Ill. June 7, 2017) ............................................................... 13

*Grimes v. Navigant Consulting, Inc.*,
 185 F. Supp. 2d 906 (N.D. Ill. 2002) ......................................................................... 13

*In re Facebook Biometric Info. Privacy Litig.,*
 No. 15-CV-03747-JD, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................. 2, 7, 8, 11

*In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-CV-03747-JD,
 2018 WL 2197546 (N.D. Cal. May 14, 2018) ............................................................ 3

*Jordan v. Dominick's Finer Foods*,
 115 F. Supp. 3d 950 (N.D. Ill. 2015) ........................................................................... 6

*Monroy v. Shutterfly, Inc.*, No. 16 C 10984,
 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ...................................................... passim

*Norberg v. Shutterfly, Inc.*,
 152 F. Supp. 3d 1103 (N.D. Ill. Dec. 2015) ..................................................... 2, 7, 10

*Olson v. McGinnis,*
 986 F.2d 1424 (7th Cir. 1993) ................................................................................... 12

*People v. Holm,*
    387 Ill. Dec. 616 (Ill. App. Ct. 2014) ........................................................................................ 6

*People v. Lewis*,
    223 Ill. 2d 393 (2006) ................................................................................................................ 5

*Rivera v. Google Inc.,*
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ............................................................................. passim

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ................................................................................................ 14

*U.S. Fire Ins. Co. v. Barker Car Rental,*
    132 F.3d 1153 (7th Cir. 1997) .................................................................................................. 5

*United States v. Marcotte*,
    835 F.3d 652, 656 (7th Cir. 2016) .......................................................................................... 10

**Statutes**

740 Ill. Comp. Stat. 14/1 .............................................................................................................. 1, 4

740 Ill. Comp. Stat. 14/10 ........................................................................................................ 5, 6, 7

740 Ill. Comp. Stat. 14/15 ........................................................................................................... 5, 7

**Rules**

Fed. R. Civ. P. 12(f) ....................................................................................................................... 12

## INTRODUCTION

In August 2014, Plaintiff Vernita Miracle-Pond created an account with Defendant Shutterfly, Inc. ("Shutterfly"), the online purveyor of personalized photo products and services. Shutterfly, according to its most recent Form 10-K, "helps [its] customers turn their precious memories into lasting keepsakes with cards and stationery, award-winning professionally-bound photo books, personalized gifts and home décor as well as calendars and prints."[1] One of the ways Shutterfly helps its customers create "lasting keepsakes" is by utilizing facial recognition technology that "automatically recognizes faces (even babies and kids!) and puts them in groups to make it fast and easy for you to tag," *i.e.*, to assign a names to a face that Shutterfly has identified in multiple photos. Shutterfly's facial recognition technology works by scanning every face that appears in the millions of photos uploaded to the site, creating a "face template" (or "faceprint") for each face based on facial points and contours, and comparing the resulting "face template" against the face templates stored in a "face template database." If a database match is found, an individual may be identified and tagged.

While this facial recognition feature of Shutterfly may assist customers in creating products to purchase, and thereby increase Shutterfly's profits, it is clearly illegal under the Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1 to 14/99 (West, Westlaw through P.A. 99-324 of 2015 Reg. Sess.). Plaintiffs Vernita Miracle-Pond and Samantha Paraf ("Plaintiffs") submit this response in opposition to Shutterfly's motion to dismiss their class action complaint (Dkt. 16) (the "Motion").

---

[1] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1125920/000112592019000008/sfly-20181231.htm (last visited on November 5, 2019).

**BACKGROUND**

BIPA, enacted by the Illinois legislature in 2008, prohibits the unauthorized gathering of two distinct and separately defined categories of data: (1) "biometric identifiers," defined as retina scans, iris scans, voiceprints, fingerprints, and scans of hand or face geometry (and specifying certain types of data as "not included" in the definition, including photographs); and (2) "biometric information," *i.e.*, any information based on a biometric identifier. Shutterfly gathers biometric identifiers – specifically, scans of face geometry – from millions of individuals without consent. Shutterfly therefore violates the statute.

Shutterfly does not deny that it gathers scans of face geometry without consent. Instead, it argues that scans of face geometry derived from photographs rather than in-person are not <u>biometric identifiers</u> under BIPA because the photographs themselves are excluded from the definition of biometric identifiers, and that scans of face geometry from photographs are not <u>biometric information</u> under BIPA because that definition excludes "information derived from items or procedures excluded under the definition of biometric identifiers," including photographs. This argument fails for several reasons and, indeed, has been soundly rejected in at least four prior court decisions, including two decisions in this District in cases against Shutterfly premised on the same conduct alleged here. *See Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) (hereinafter "*Shutterfly II*"); *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. Dec. 2015) (Norgle, J.) (hereinafter "*Shutterfly I*"); *Rivera v. Google Inc.,* 238 F. Supp. 3d 1088 (N.D. Ill. 2017) (Chang, J.); *In re Facebook Biometric Info. Privacy Litig.,* No. 15-CV-03747-JD, 185 F. Supp. 3d 1155 (N.D. Cal. 2016). The *Facebook* court, on a motion for summary judgment, recently reaffirmed its rejection of the argument that that "BIPA regulates in-person or 'live' scans of facial geometry only … based on well-established principles of statutory interpretation." *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-

CV-03747-JD, 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018).

The *Shutterfly II* decision is particularly instructive.[2] In a thorough and well-reasoned 19-page opinion, Judge Gottschall analyzed relevant sections of BIPA, BIPA's legislative history, prior cases, and extrinsic evidence regarding the field of biometric imaging and denied Shutterfly's motion to dismiss for the same reasons Shutterfly's present, wholly redundant motion should be denied.

First, Shutterfly's face scans are "biometric identifiers" under Section 14/10 of BIPA, which provides in relevant part: "'Biometric Identifier' means a … scan of hand or face geometry." Plaintiffs do not claim that scans of face geometry are "biometric information" under BIPA; the definition of "biometric information" excludes "information derived from items or procedures excluded under the definition of biometric identifiers," including photographs. Significantly, this exclusion of "derivative" information pertains only to definition of biometric <u>information</u>, not biometric <u>identifiers</u>.

Second, the statute says nothing about limiting biometric identifiers to information gathered in person, and there is nothing in the legislative history of BIPA to indicate that the Illinois legislature intended such a limitation. Third, it would be senseless to permit unauthorized scanning from photographs and prohibit only in-person collection of such data. All of the biometric identifiers covered by the statute can be obtained from visual or audio media. If the intermediation of a photograph or audio recording excused all subsequent processing into a biometric identifier, Shutterfly's interpretation of the exception would swallow the rule. The Court should reject Shutterfly's argument that BIPA does not cover Shutterfly's scans of face geometry.

---

[2] *Shutterfly II* was withdrawn after discovery revealed potential standing issues for the named plaintiff.

3

Shutterfly also moves to dismiss Plaintiffs' allegation, in paragraph 48 of the Complaint (Dkt. 1), that "Shutterfly is selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class members' biometric identifiers and/or biometric information," because Plaintiffs' Complaint does not cite the specific section of BIPA that prohibits such conduct. However, Shutterfly itself cites the relevant statutory section in its Memorandum. Memo at 14 ("BIPA provides that no entity in possession of biometric data may "sell, lease, trade, or otherwise profit from" the data, and that it may not "disclose . . . or otherwise disseminate" the data without consent. 740 ILCS 14/15(c)-(d)."). Thus, it is clear that the Complaint sufficiently describes Plaintiffs' claim under the liberal "notice pleading" standards under the Federal Rules of Civil Procedure.

Shutterfly additionally argues Plaintiffs' allegation in paragraph 48 should be dismissed because it is a "conclusory allegation" with no factual support. This argument also fails for multiple reasons. First, the allegation is one of plain fact; no conclusion is alleged. Second, on a motion to dismiss, all factual allegations are to be taken as true. Third, on a motion to dismiss, all reasonable inferences are to be drawn in favor of Plaintiffs. In this instance, it is reasonable to infer that, when a profit-making company adds a major new feature to its product offerings, it does so because it expects the feature to result in increased sales and profits. And fourth, there is abundant evidence in Shutterfly's own documents, as well as the mainstream financial press, to support the allegation that Shutterfly profits from its use of facial recognition.

In sum, Shutterfly is free to gather photographs, and Shutterfly is free to gather many types of information from photographs, such as demographic data and physical descriptions. But Shutterfly is not free to gather scans of face geometry from photographs uploaded in Illinois. The Motion should be denied.

**THE BIOMETRIC INFORMATION PRIVACY ACT**

Section 10 of BIPA states, in pertinent part:

'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or <u>scan of hand or face geometry.</u> Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. . . .

'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

740 Ill. Comp. Stat. 14/10 (emphasis added). BIPA prohibits possessing, capturing, collecting, purchasing, receiving through trade, or otherwise obtaining an individual's biometric identifiers or biometric information, absent express consent from the individual following a written disclosure of the collection and a public policy for handling and disposing of such data. 740 Ill. Comp. Stat. 14/15(a)- (d).

**ARGUMENT**

**I. Shutterfly's Interpretation of BIPA Contradicts Both the Statutory Language and Legislative Intent.**

When interpreting state law, a federal court applies the rules of statutory construction applicable under state law. *See U.S. Fire Ins. Co. v. Barker Car Rental,* 132 F.3d 1153, 1156 (7th Cir. 1997) ("[W]e must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task."). "In Illinois, the applicable principles of statutory construction are well established. The primary rule is that courts should ascertain and give effect to the intention of the legislature. To achieve that goal, we must regard the language of the statute as the best indication of legislative intent." *U.S. Fire Ins.*, 132 F.3d at 1156 (citing *Abrahamson v. Ill. Dep't of Prof'l Regulation,* 153 Ill. 2d 76, 90 (1992)); *see also DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006) ("When the language of the statute is clear, it must be applied

5

as written without resort to aids or tools of interpretation."). Courts "will not depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *People v. Lewis*, 223 Ill. 2d 393, 402 (2006) (citation omitted).

Where a statute requires interpretation and the exact legislative intent cannot be ascertained from the plain and ordinary meaning of its language alone, the court is guided by the canons of statutory construction, by legislative history, *People v. Holm,* 387 Ill. Dec. 616, 619 (Ill. App. Ct. 2014), and also by the practical consequences of any competing statutory interpretations, *Jordan v. Dominick's Finer Foods*, 115 F. Supp. 3d 950, 955 (N.D. Ill. 2015).

In this case, the plain language of BIPA defines Shutterfly's "scans of face geometry" derived from photographs to be "biometric identifiers." Although the Court need go no further in its analysis, this conclusion is confirmed by multiple canons of statutory construction and the legislative history.

### A. Scans of Face Geometry Derived From Photographs Are Biometric Identifiers Under The Plain Language of BIPA.

Under the plain language of BIPA, the definition of "biometric identifiers" includes "scans of … face geometry." 740 Ill. Comp. Stat. 14/10. The definition does not contain any qualification relating to how the identifier was derived. Therefore, on its face, the statute encompasses facial scans derived from human faces recorded in photographs. The Complaint is consistent with the clear and unambiguous statutory language. The Complaint alleges that Shutterfly's sophisticated, patented facial recognition technology searches each and every user-uploaded photo for faces, and then scans those faces for geometric points and contours for purposes of creating and storing a digitized face template of each face. (Compl. ¶¶ 24-25, 29, 43-44, 46.) The resulting face templates – not the photographs from which they were derived, but the resulting highly detailed digital maps of geometric points and measurements – are "scans of face geometry" and thus fall within the plain

language of BIPA's definition of "biometric identifiers." (*Id.*)[3]

Shutterfly contends that by excluding data derived from photographs from the definition of biometric information, the Illinois legislature necessarily intended to exclude from BIPA's coverage all biometric identifiers not obtained "in person." This logic is specious given that scans of face geometry are specifically included in BIPA's definition of "biometric identifiers." *See Shutterfly I*, 152 F. Supp. 3d at 1106 ("Turning to the plain language of the statute," and holding that allegations that defendant collected scans of face geometry from user-uploaded photographs "plausibly state[s] a claim for relief under BIPA."); *Shutterfly II*, 2017 WL 4099846, at *3 (noting "the absence of any textual support for Shutterfly's interpretation.); *Rivera,* 238 F. Supp. 3d at 1096 ("The problem with [Defendant's] argument is that there is no textual or structural clue to support it."); *Facebook*, 185 F. Supp. 3d at 1171 (reading the term "scan" in BIPA to mean "in-person scan" is a "cramped interpretation not stated in BIPA and cannot be squared with the statute's purpose.")

In an effort to circumvent the explicit inclusion of "scans of face geometry" in the definition of "biometric identifiers," Shutterfly turns to "statutory construction," arguing that only facial scans obtained in-person are "biometric identifiers" under BIPA because "[e]very item on BIPA's list of 'biometric identifiers' is a physical, *in-person* process for obtaining information about an individual that can be used to authenticate a transaction or access a secure area." Memo at 7. Shutterfly's premise is demonstrably false and was explicitly called out as "incorrect" in *Shutterfly II*, when Judge Gottschall reviewed current literature establishing "that

---

[3] The Complaint also alleges that Shutterfly collects "biometric information" (pertaining to gender, age and location) that is derived from the resulting "scans of face geometry." (Compl. ¶¶ 26, 30, 43.) Because such information is derived from "biometric identifiers" as opposed to the photographs themselves, Shutterfly's unauthorized collection of this information also constitutes a violation of BIPA. *See* 740 Ill. Comp. Stat. 14/10; 740 Ill. Comp. Stat. 14/15(a)-(d).

7

fingerprints and retinal scans can be derived from images and photographs." 2017 WL 4099846, at *4. Judge Gottschall further noted that "even if particular forms of biometric data cannot be obtained via photographic images using present-day technology, it would be rash, given the pace of technological development, to assume that obtaining such data via photographs will not become possible in the future." *Id*. The courts in *Rivera* and *In re Facebook* similarly rejected the argument that BIPA covers only in-person scans. *Rivera*, 238 F. Supp. 3d at 1096 (observing that "advances in technology are what drove the Illinois legislature to enact the Privacy Act in the first place," so "it is unlikely that the statute sought to limit the definition of biometric identifier by limiting how the measurements are taken."); *In re Facebook,* 185 F. Supp. 3d at 1172 ("The statute is an informed consent privacy law addressing the collection, retention and use of personal biometric identifiers and information at a time when biometric technology is just beginning to be broadly deployed. Trying to cabin this purpose within a specific in-person data collection technique has no support in the words and structure of the statute, and is antithetical to its broad purpose of protecting privacy in the face of emerging biometric technology.")

Shutterfly dismisses these holdings by declaring (with no support) that, in enacting BIPA, "the legislature was not targeting the creation of fake biometric data; it was regulating the collection and storage of certain categories of real biometric data used for 'financial transactions and security screenings.'" To be clear, Shutterfly's facial scans are not "fake biometric data;" the people who were deprived of their agency to say "no" to Shutterfly's creation of face templates are quite real, as is the harm suffered from Shutterfly's failure to comply with BIPA's provisions. Indeed, the risks presented by collection of face scans , including those made from


photographs, are all too real.[4] The legislature would have no rational reason to exclude biometric identifiers made from human faces contained in photographs from BIPA and there is no basis to conclude that it did so.

### B. The Legislative History of BIPA Provides No Support for Shutterfly's Position

Shutterfly contends that textual changes between earlier versions of BIPA not enacted by the legislature and the final version confirm that the legislature intended to exclude "all forms of facial recognition derived from photographs." Judge Gottschall considered and rejected precisely the same arguments in *Shutterfly II*, correctly concluding that the cited textual changes

> provide no evidence that the legislature intended to confine the term "scans of face geometry" to data obtained in person, nor that it intended to exclude data obtained from photographs from the definition of "biometric identifier." If anything, Shutterfly's position is significantly undermined by its failure to identify any reference in the legislative record to in-person processes or any distinction between biometric data obtained by such processes and data obtained from digital images and other sources.

2017 WL 4099846, at *5. The same argument failed in *Rivera* as well. 238 F. Supp. 3d at 1100 ("[S]cans" of "face geometry" made it into the final version, and those, as described above under a plain-meaning interpretation of the statute, can apply equally to in-person and photograph-based biometric measurement of faces.").

### C. Shutterfly Offers No Reason for This Court to Diverge From the Unanimous Holdings of District Courts on This Issue.

Shutterfly urges this Court to reject five opinions rendered by the four U.S. District Courts that have considered and rejected its argument that scans of face geometry obtained from photographs are not covered by BIPA: *Shutterfly I*, *Shutterfly II*, *Rivera* and two opinions in *In*

---

[4] *See, e.g.,* Drew Harwell, "FBI, ICE find state driver's license photos are a gold mine for facial-recognition searches," https://www.washingtonpost.com/technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/ (last visited on November 4, 2019).

9

*re Facebook*. This Court should reject Shutterfly's invitation to be the first in the nation to adopt Shutterfly's position. While there are legally insignificant variations in these courts' reasoning, all employed sound legal analysis and arrived at the same conclusion: none of the tortured statutory interpretations or revisionist legislative history advanced by Shutterfly, Google or Facebook in their respective cases overcome the simple fact that facial scans from photographs are covered by BIPA's plain wording. Shutterfly's latest, strained efforts to discredit these earlier decisions are unpersuasive.

Regarding *Shutterfly I*, Shutterfly complains that Judge Norgle did not engage in statutory interpretation to "square the operation of Shutterfly's technology with BIPA's exclusion of photos and information derived from them." Memo at 11. Judge Norgle considered "the plain language of the statute," in particular the definitions of "biometric identifier" and "biometric information;" reviewed Plaintiff's allegations that "Defendants' are actively collecting, storing, and using the biometrics (face geometry) of millions of individuals, who are not the Websites' customers, in violation of the BIPA," and "that Defendants are using his personal face pattern to recognize and identify Plaintiff in photographs posted to websites." 152 F. Supp. 3d at 1106. When a statute is unambiguous, the court's inquiry "starts and stops" with the text. *United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016). The *Shutterfly I* court concluded that Plaintiff stated a "plausible" claim for relief under BIPA. 152 F. Supp. 3d at 1106. No further interpretation was required.

Shutterfly attacks Judge Chang's decision in *Rivera* as "rest[ing] on the assumption that BIPA lacks a coherent structure and that no meaning can be ascribed to the General Assembly's choices about what to regulate and what to exclude." Memo at 12. Shutterfly misrepresents Judge Chang's analysis. While Shutterfly contends that the removal of the words "facial recognition" from an earlier proposed version of BIPA can only be interpreted to mean that the

legislature intended to exclude face scans entirely from coverage under the statute, Judge Chang reasonably concluded that the words might have been deleted for other reasons such as redundancy or grammatical consistency and, thus, the legislative history was inconclusive. Judge Chang also interpreted the statute to account for some inconsistencies in the statutory language. *Rivera*, 238 F. Supp. 3d 1088, 1094. That Shutterfly disagrees with Judge Chang's interpretation is not a sufficient reason for this Court to discount the *Rivera* decision.

Shutterfly urges this Court to reject *In re Facebook* because it disagrees with one element of Judge Donato's extensive statutory interpretation. Considering the items excluded from BIPA's definition of "biometric identifier" along with photographs, *e.g.,* writing samples and written signatures, Judge Donato opined that the term "'[p]hotographs' [in BIPA] is better understood to mean paper prints of photographs, not digitized images stored as a computer file and uploaded to the Internet." 185 F. Supp. 3d at 1171. Shutterfly offers a pre-selected 2008 dictionary definition as evidence that the Illinois legislature intended "photograph" to mean both paper and digital images. Aside from the questionable nature of Shutterfly's "evidence," the entire point is inconsequential to Judge Donato's holding that, under the "plain language of BIPA," the allegation "that Facebook scans user-uploaded photographs to create a 'unique digital representation of the face...based on geometric relationship of their facial features' … falls within the scan of face geometry stated in the statute." *Id.*

Finally, Shutterfly characterizes Judge Gottschall's opinion in *Shutterfly II* as echoing the analysis in *Rivera*. That two district courts agree on the bases to reject Shutterfly's argument should lend that reasoning more weight, not less. In criticizing *Shutterfly II*, Shutterfly repeats its fallacious claim that all of the items included in the definition of "biometric identifier" can only be created in the corporeal presence of the person, and its unsupported, illogical claim that face scans from photographs are "fake biometric data" that the legislature did not intend to cover

11

under BIPA. *See supra* at 7-8.

The decisions in *Shutterfly I, Shutterfly II*, *Rivera* and *In re Facebook*, all holding that face scans derived from photographs are covered under BIPA, are persuasive and well-reasoned opinions rendered by United States district courts and should serve as sound guidance to this Court. Shutterfly's criticisms are unfounded.

### II. Plaintiffs Sufficiently Allege Shutterfly Profits From Its Facial Recognition Technology.

Shutterfly moves to dismiss paragraph 48 of Plaintiffs' Class Action Complaint, which alleges, upon information and belief that "Shutterfly is selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class members' biometric identifiers and/or biometric information." Shutterfly argues that the allegation is "conclusory" and "factually unsupported." Shutterfly also complains that the Complaint does not cite the specific section of BIPA that the alleged conduct violates. Shutterfly's motion should be denied on several grounds.

First, the motion is procedurally improper. A motion to strike under Federal Rule of Civil Procedure 12(f) is the proper vehicle to seek to remove a factual allegation from the Complaint. *See, e.g., Conner v. Bd. of Trustees for Univ. of Illinois*, No. 19 CV 846, 2019 WL 5179625 (N.D. Ill. Oct. 15, 2019) (Under Rule 12(f), "[a] court may—but is not required to—strike allegations from a pleading that are 'redundant, immaterial, impertinent, or scandalous.'"). Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored, *Olson v. McGinnis,* 986 F.2d 1424 (7th Cir. 1993)*,* which may explain Shutterfly's reluctance to frame its motion properly.

Second, the allegation at issue is not "conclusory;" it alleges an act that Shutterfly is engaged in—a fact, not a legal conclusion. "[C]onclusory statements are "bare legal conclusions, not facts." *Conner*, 2019 WL 5179625, at *10, *quoting Adams v. City of Indianapolis,* 742 F.3d 720, 733 (7th Cir. 2014). As held in *Connor*, an allegation of an "act" is a "specific factual allegation[]' and should be treated that way." *Id.*

12

Third, whether Shutterfly's motion is construed as a motion to dismiss or a motion to strike, all factual allegations, such as paragraph 48 of the Complaint, must be taken as true. *See Brass v. Dunlap*, No. 09 CV 6873, 2012 WL 5964591, at *2 (N.D. Ill. Nov. 28, 2012) (motion to strike); *Doctors Nursing & Rehab. Ctr., LLC v. Norwood*, No. 1:16-CV-10255, 2017 WL 2461544 (N.D. Ill. June 7, 2017) (motion to dismiss). Thus, for present purposes, the allegation that Shutterfly is "profiting" from its use of Plaintiffs' and Class members' face scans is deemed true and should not be dismissed or stricken.

Fourth, on a motion to dismiss or motion to strike, all reasonable inferences are drawn in plaintiffs' favor. *Id*. It is reasonable here to infer that Shutterfly, a profit-making venture recently reported to be valued at $2.7 billion,[5] added facial recognition technology to its platform in order to increase sales and profits, not as a charitable gift to its users. Shutterfly stated as much in an Investor Presentation in 2017, citing "facial recognition" as part of its effort to "Make Purchasing Personalized Products Simple."[6] Unsurprisingly, articles in the financial press also draw this inference.[7][8]

Finally, Shutterfly seeks dismissal of paragraph 48 of the Complaint, arguing that "[b]ecause plaintiffs never even cite the portions of BIPA governing the sale and dissemination

---

[5] https://www.cnbc.com/2019/06/10/shutterfly-strikes-take-private-deal-with-apollo-global-valuing-company-at-2point7-billion.html (last visited on November 5, 2019).
[6] *See* http://ir.shutterfly.com/static-files/95b28322-b8f2-4175-9f71-51f391f92c9b at p.9 (last visited on November 5, 2019).
[7] *See, e.g.,* https://www.nasdaq.com/articles/shutterfly-sfly-shares-dip-21-over-year-can-it-rebound-2018-12-27 (last visited on November 5, 2019) (Shutterfly's addition of new technology, including facial recognition, "is expected to improve customer relationship and drive sales over time.").
[8] The Court may take judicial notice of reliable information published on the internet. *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 914 (N.D. Ill. 2002), *citing Austin v. American Ass'n of Neurological Surgeons*, 253 F.3d 967, 971 (7th Cir.2001).

of biometric data, they have not adequately alleged any claims based on those provisions." Memo at 15. To the extent this is any sort of valid objection, it is completely inconsequential. In its Motion, Shutterfly itself cites to the relevant section of BIPA, 740 ILCS 14/15, thus demonstrating that it has "fair notice" of Plaintiffs' claim under this section. "A plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted).

Shutterfly's "motion to dismiss" paragraph 48 of the Complaint is both procedurally improper and baseless. The Motion should be denied.

## CONCLUSION

The plain wording of BIPA, sound principles of statutory interpretation, and the prior opinions of all four district courts to have considered the issue all weigh strongly in favor of a finding that Shutterfly's face geometry scans derived from photographs are covered by the statute. Shutterfly's documents and other publicly available information support a strong inference that Shutterfly profits from its collection and use of face geometry scans. Shutterfly's motion to dismiss should be denied in its entirety.

DATED: November 8, 2019          Respectfully submitted,

By: */s/ Henry J. Kelston*

AHDOOT & WOLFSON, PC
Tina Wolfson (*pro hac vice*)
twolfson@ahdootwolfson.com
Henry J. Kelston
hkelston@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111

CAREY RODRIGUEZ MILIAN GONYA, LLP
David P. Milian (*pro hac vice*)
*dmilian@careyrodriguez.com*
1395 Brickell Ave. Suite 700
Miami, FL 33131
Tel: (305) 372-7474

CARLSON LYNCH, LLP
Katrina Carroll
*kcarroll@carlsonlynch.com*
111 West Washington Street, Suite 1240
Chicago, IL 60602
Tel: (312) 750-1265

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** to be served upon counsel of record for Defendant in accordance with Fed. R. Civ. P. 5(b)(2) and Local Rule 5.3(a)(1).

By: */s/ Henry J. Kelston*
    Henry J. Kelston

AHDOOT & WOLFSON, PC
*hkelston@ahdootwolfson.com*
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111