**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VERNITA MIRACLE-POND and SAMANTHA PARAF, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHUTTERFLY, INC.,<br><br>Defendant. | Civil Action No. 1:19-cv-4722<br><br>District Judge Mary M. Rowland |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION**
**TO COMPEL ARBITRATION AND STAY LITIGATION**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT ................................................................................................................... 6

I.  PLAINTIFF MIRACLE-POND NEVER ENTERED INTO AN AGREEMENT
    TO ARBITRATE DISPUTES WITH SHUTTERFLY .......................................... 6

    A.  Plaintiff did not assent to Shutterfly's Terms of Use in 2014 ................... 6

    B.  Shutterfly's belatedly added arbitration clause is illusory and unenforceable ........ 8

    C.  Plaintiff did not assent to Shutterfly's arbitration clause after it was added
        to the Terms of Use without notice to users ........................................... 9

    D.  Shutterfly's September 2019 email did not create a binding agreement
        to arbitrate this dispute .......................................................................... 10

        1.  Shutterfly's September 2019 email did not provide clear and conspicuous
            notice that an arbitration clause had been added to the ToU. .................... 11

        2.  A unilaterally imposed arbitration clause cannot be applied
            retroactively to pending disputes ................................................... 12

        3.  Plaintiff did not agree to the arbitration clause by failing to close
            her account in response to the September 2019 email ............................ 13

        4.  Shutterfly's September 2019 email was a coercive and misleading *ex
            parte* communication that cannot deprive Plaintiff of her right to
            proceed in this Court .................................................................. 13

II. A DISPUTE OVER THE EXISTENCE OF AN AGREEMENT TO ARBITRATE IS
    TO BE DECIDED BY THE COURT, NOT AN ARBITRATOR ................................... 14

CONCLUSION ................................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*A.D. v. Credit One Bank, N.A.*,
  885 F.3d 1054 (7th Cir. 2018) ...................................................................................... 5

*AlanRoss Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569,
  2018 WL 3344364 (N.D. Ill. July 9, 2018) ................................................................. 7

*Baker v. Santander Consumer USA*, No. 18-cv-7365,
  2019 WL 4750287 (N.D. Ill. Sept. 30, 2019) ............................................................. 5

*Blair v. Rent-a-Center, Inc.*,
  928 F.3d 819 (9th Cir. 2019) ...................................................................................... 9

*Brodsky v. HumanaDental Ins. Co.*, No. 1:10-cv-3233,
  2016 WL 5476233 (N.D. Ill. Sept. 29, 2016) ........................................................... 14

*Cobb v. Ironwood Country Club*,
  233 Cal.App.4th 960 (2015) ........................................................................................ 8

*CouponCabin, Inc. v. PriceTrace, LLC*, No. 18-cv-7525,
  2019 WL 1572448 (N.D. Ill. Apr. 11, 2019) .............................................................. 7

*Elsasser v. DV Trading, LLC*, No. 17-cv-04825,
  2018 WL 4694364 (N.D. Ill. Sept. 25, 2018) ............................................................. 5

*Faulkenberg v. CB Tax Franchise Sys., LP*,
  637 F.3d 801 (7th Cir. 2011) ...................................................................................... 5

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..................................................................................................... 5

*Granite Rock Co. v. International Brotherhood of Teamsters*,
  561 U.S. 287 (2010) ................................................................................................... 15

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) .................................................................................... 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ................................................................................................. 15

*Hussein v. Coinabul, LLC*, No. 14-cv-5735,
  2014 WL 7261240 (N.D. Ill. Dec. 19, 2014) ............................................................ 12

*Hutcherson v. Sears Roebuck & Co.*,
  342 Ill. App. 3d 109, 793 N.E.2d 886 (2003) .......................................................... 10

*In re Currency Conversion Fee Antitrust Litigation*,
361 F. Supp. 2d 237 (S.D.N.Y. 2005) ................................................................ 14

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
893 F. Supp. 2d 1058 (D. Nev. 2012).................................................. 8, 12, 13

*Janiga v. Questar Capital Corp.*,
615 F.3d 735 (7th Cir. 2010) .............................................................................. 15

*Larsen v. Citibank FSB*,
871 F.3d 1295 (11th Cir. 2017) ........................................................................ 10

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) .......................................................................................... 9

*Mohammed v. Uber Techs., Inc.*,
237 F. Supp. 3d 719 (N.D. Ill. 2017) ............................................................... 15

*Morgan v. Xerox Corp.*, No. 13-cv-409,
2013 WL 2151656 (E.D. Cal. May 16, 2013) .................................................. 10

*Morrison v. Amway*,
517 F.3d 248 (5th Cir. 2008) .............................................................................. 8

*Ocean Tomo, LLC v. Barney*, No. 12-cv-8450,
2013 WL 4804980 (N.D. Ill. Sept. 9, 2013) .................................................... 5

*Peleg v. Neiman Marcus Group, Inc.*,
(2012) 204 Cal.App.4th 1425, 140 Cal.Rptr.3d 38 (2012)............................... 8

*Piekarsi v. Amedisys Illinois, LLC*,
4 F. Supp. 3d 952 (N.D. Ill. 2013) ................................................................... 14

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)............................................................................................. 15

*Rosen v. SCIL, LLC*,
343 Ill. App. 3d 1075, 799 N.E.2d 488 (2003) ............................................... 10

*Rosenblum v. Travelbyus.com Ltd.*,
299 F.3d 657 (7th Cir. 2002) .............................................................................. 5

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ................................................................ 5, 6, 12

*Sherman v. AT&T Inc.*, No. 11-cv-5857,
2012 WL 1021823 (N.D. Ill. Mar. 26, 2012)................................................ 6, 9

*TopstepTrader, LLC v. OneUp Trader, LLC*, No. 17-cv-4412,
2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) ...................................... 5, 6, 7

iv

*Van Tassell v. United Mktg. Group, LLC*,
　795 F. Supp. 2d 770 (N.D. Ill. 2011) ........................................................................... 10

*Westport Ins. Corp. v. Travelers Indem. Co.*, No. 16-cv-2286,
　2019 WL 414715 (N.D. Ill. Feb. 1, 2019) ...................................................................... 9

*Williams v. TCF Nat. Bank*, No. 12-cv-5115,
　2013 WL 708123 (N.D. Ill. Feb. 26, 2013) ......................................................... 8, 9, 12

## **<u>Statutes</u>**

740 ILCS 14/1 .................................................................................................................... 1

## INTRODUCTION

Plaintiffs Vernita Miracle-Pond and Samantha Paraf brought this action alleging that Shutterfly violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") by employing "facial recognition" on photographs uploaded to the Shutterfly website. Shutterfly has moved to stay this litigation and force Ms. Miracle-Pond (only) ("Plaintiff") to pursue her claims in arbitration rather than this Court. Shutterfly's motion fails for the fundamental reason that there is no binding agreement between Shutterfly and Plaintiff.

When Plaintiff established her Shutterfly account in 2014, Shutterfly's Terms of Use ("ToU") contained no arbitration clause. Shutterfly's motion is wholly premised on the claim that Plaintiff is bound by an arbitration provision Shutterfly added to its ToU in 2015 pursuant to a "unilateral modification" clause in the 2014 ToU. Shutterfly does not claim to have notified its users of the arbitration provision inserted in the ToU until September 2019, four years after the clause was added and, not coincidentally, three months after Plaintiffs filed this class action.

Shutterfly's motion is fatally flawed in numerous respects. First, Plaintiff did not assent to Shutterfly's ToU in 2014. The ToU were presented to Plaintiff in the form of a "browsewrap" agreement that would become binding if Plaintiff visited or used the Shutterfly website. Plaintiff was not required to view the ToU before opening her account and had no actual or constructive notice of the terms of the ToU, including the modification clause. Thus, Plaintiff did not assent to the ToU (which did not, in any event, include an arbitration clause). Second, even if Plaintiff had assented to the 2014 ToU (which she did not), Shutterfly's furtive attempt to insert an arbitration clause into the ToU in 2015 and in subsequent versions, without clear and conspicuous notice, would render the arbitration clause unenforceable. Third, the added arbitration clause is illusory and unenforceable because it would be subject to unilateral modification without notice, and because it would permit modifications to affect already-pending disputes.

1

Fourth, Shutterfly's September 2019 email cannot obligate Plaintiff to arbitrate this dispute for three reasons: (i) the email does not adequately inform users about the arbitration clause unilaterally inserted in 2015; (ii) even if the September 2019 email somehow activated the four-year-old arbitration clause, it cannot be applied retroactively to a dispute that was already the subject of a pending federal class action; and (iii) the September 2019 email was a misleading and improper *ex parte* communication with Plaintiff and putative class members because it failed to inform them of the ongoing litigation and that, by accepting the arbitration clause, they would forfeit their rights as potential plaintiffs or class members.

Finally, Shutterfly conspicuously avoids mentioning the California choice-of-law provision it included in its modified ToU, alongside its arbitration and class waiver provisions. This is because, under California law, claims seeking "public injunctive relief" (and Plaintiffs' request for an injunction prohibiting Shutterfly from continuing to collect face scans of Illinois residents qualifies) cannot be compelled to individual arbitration. Thus, Shutterfly's motion would fail even if a valid contract were formed, because that contract invokes California law under which Shutterfly may not compel the present action to individual arbitration.

## **FACTUAL BACKGROUND**

By Shutterfly's own admission, when Plaintiff opened her Shutterfly account in 2014, she was not required to view or agree to Shutterfly's ToU. Instead,

> when Ms. Miracle-Pond activated her Shutterfly account using the Android mobile application, she clicked the "Accept" button above the statement that "[b]y tapping 'Accept', you *agree to use the Shutterfly for Android software and the associated Shutterfly service in accordance with Shutterfly's Terms of Use.*

(Memo at 7-8 (emphasis added).) The only provision cited by Shutterfly relating to assent to the 2014 ToU is *within* the ToU themselves, not on the signup screen Plaintiff viewed. The ToU state: "By visiting any of our Sites and Apps, you are signifying your assent to these Terms and our

Privacy Policy, which is incorporated herein by reference."

At no point in the registration process was Plaintiff required to view the ToU; she was not advised to read the ToU before signing up; she was not told that the ToU constituted a legally binding contract; she was not told that the ToU as written would grant Shutterfly the unfettered right to modify the terms without notice to users of any kind, and she was not told that she would be agreeing to the ToU if she visited any of Shutterfly's "Sites or Apps."[1] (*Id.*)

The provision of the ToU that purported to give Shutterfly the right to unilaterally modify the ToU without notice to users was likewise in the 2014 ToU, not on any screen Plaintiff viewed. The ToU provided, in relevant part:

> We may revise these Terms from time to time by posting a revised version. YOUR CONTINUED USE OF ANY OF THE SITES AND APPS AFTER WE POST ANY CHANGES WILL CONSTITUTE YOUR ACCEPTANCE OF SUCH CHANGES. IN ADDITION, BY ORDERING PRODUCTS OR USING SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ AND REVIEWED THESE TERMS IN THEIR ENTIRETY, YOU AGREE TO THESE TERMS AND THE PRIVACY POLICY AND THESE TERMS CONSTITUTE BINDING AND ENFORCEABLE OBLIGATIONS ON YOU.

This revision clause did not require notice of revisions to Shutterfly users.

Shutterfly unilaterally added an arbitration provision to the ToU in 2015, well after Plaintiff established her Shutterfly account. (Memo at 3.) However, Shutterfly does not claim to have informed its users about the existence of the arbitration clause until September 2019—after this case was filed:

> In early September 2019, Shutterfly sent an email notice to its users, including Ms. Miracle-Pond, of the most recent update to the Terms. The email summarized the changes, including the fact that Shutterfly updated the Terms to "clarify [users'] legal rights in the event of a dispute and how disputes will be resolved in arbitration"; provided a link to view the full Terms; informed users that the new

---

[1] The preamble to the 2014 ToU, which Plaintiff was not required to view or instructed to read during the registration process, included the following: "Please read these Terms of Use ("Terms") carefully. They contain the legal terms and conditions that govern your use of and access to our websites, mobile sites, and mobile applications (collectively, our "Sites and Apps"), as well as our provision of products and services."

updates had taken effect; and advised users as follows: "If you do not contact us to close your account by October 1, 2019, or otherwise continue to use our websites and/or mobile applications, you accept these updated terms."

(Memo at 4.) Shutterfly's September 2019 email was sent to Plaintiff and all putative class members four years after Shutterfly inserted the arbitration clause in the ToU, and approximately three months after this class action was filed on June 11, 2019. As discussed below at Section I.D.4, the September 2019 email was an improper *ex parte* communication with Plaintiff and putative class members because it failed to advise them of the pending litigation while seeking to deprive them of their rights as plaintiffs or class members.

Even then, the September 2019 email did not clearly inform users that an arbitration clause had been added to the ToU. *See* Dkt. 22-1. The email stated: "We're updating our Privacy Policy and Terms of Use, reflecting our ongoing commitment to be transparent about how we use your data and keep it safe. We invite you to read our policies in full, but here's a snapshot:" followed by four bullet points unrelated to arbitration.

Then, in the only reference to arbitration, the email noted: "We also updated our Terms of Use to clarify your legal rights in the event of a dispute and how disputes will be resolved in arbitration." The email then immediately reverted to the subject of privacy ("Keeping your data safe and maintaining transparency are important to us") before informing users: "If you do not contact us to close your account by October 1, 2019, or otherwise continue to use our websites and/or mobile applications, you accept these updated terms." Plaintiff did not close her account by October 1, 2019, but Shutterfly does not contend that she "otherwise use[d]" Shutterfly's website or mobile apps since receiving the September 2019 email.

## LEGAL STANDARD

Contrary to Shutterfly's assertion, the presumption in favor of arbitration "is inapplicable where [as here] it is not clear that the parties agreed to arbitrate their dispute." *Elsasser v. DV*

*Trading, LLC,* No. 17-cv-04825, 2018 WL 4694364, at *2 (N.D. Ill. Sept. 25, 2018), *citing Ocean Tomo, LLC v. Barney*, No. 12-cv-8450, 2013 WL 4804980, at *6 (N.D. Ill. Sept. 9, 2013). *See also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808–09 (7th Cir. 2011), *citing First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938 (1995).

"The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate." *Baker v. Santander Consumer USA,* No. 18-cv-7365, 2019 WL 4750287, at *2 (N.D. Ill. Sept. 30, 2019), citing 9 U.S.C. § 4; *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). The burden of the party opposing arbitration is to "identify[] a triable issue of fact on the purported arbitration agreement," a burden "akin to that of a party opposing summary judgment under Federal Rule of Civil Procedure 56." *Id.* As at the summary judgment stage, "the Court must view the evidence in the light most favorable to the non-movant (that is, the party opposing arbitration) and draw reasonable inferences in the non-movant's favor." *Id.*

Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation. *Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 662 (7th Cir. 2002). Under Illinois law, formation of a contract requires mutual assent. *TopstepTrader, LLC v. OneUp Trader, LLC,* No. 17-cv-4412, 2018 WL 1859040, at *2 (N.D. Ill. Apr. 18, 2018). In determining whether a contract was formed on the internet, the relevant inquiry is (1) "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement," and (2) "whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). The Seventh Circuit has cautioned that "we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.) Indeed, a person using the Internet may not realize that she is agreeing to a contract at all, whereas a reasonable person signing a physical contract

5

will rarely be unaware of that fact." *Id.* at 1035.

**ARGUMENT**

**I.    PLAINTIFF MIRACLE-POND NEVER ENTERED INTO AN AGREEMENT TO ARBITRATE DISPUTES WITH SHUTTERFLY.**

**A.    Plaintiff did not assent to Shutterfly's Terms of Use in 2014.**

Shutterfly claims that a binding contract between Plaintiff and Shutterfly, consisting of the 2014 ToU, was formed when Plaintiff clicked on the "Accept" button to establish her Shutterfly account. (Memo at 7-8.)  Shutterfly is wrong.

The text pertaining to the "Accept" button that Plaintiff pressed said, ""[b]y tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly service in accordance with Shutterfly's Terms of Use." It did not say, "By tapping 'Accept,' you agree to the Terms of Use," *see TopStep Trader,* 2018 WL 1859040, at *3; it did not say "I have read and agree to the [Shutterfly] Terms of Service, *see Sherman v. AT&T Inc.*, No. 11-cv-5857, 2012 WL 1021823, at *1 (N.D. Ill. Mar. 26, 2012). The difference is material: some provisions of the ToU relate to manner in which a user *uses* "the Shutterfly for Android software and the associated Shutterfly service," *e.g.*, the section on "Making Purchases" ("All information that you provide to us or our third party payment processor must be accurate, current and complete."). At most, Plaintiff agreed during the registration process that *her use of Shutterfly* would not violate these sections of the ToU. Other sections of the ToU do not relate in any way to the manner in which the user uses Shutterfly, *e.g.*, "We may revise these Terms from time to time by posting a revised version." At no time and in no way did Plaintiff assent to the ToU. The "Accept" button that Plaintiff clicked did not "unambiguously pertain" to acceptance and gave no "explicit warning that by clicking the [Accept] button, the user agreed" to the ToU. *See Sgouros*, 817 F.3d at 1034.

The 2014 ToU were in the form of a "browsewrap" agreement, not a "clickwrap" as Shutterfly contends. "A 'clickwrap' agreement is formed when website users click a button or

6

check a box that explicitly *affirms that the user has accepted the terms* after having the opportunity to view or scroll through the terms posted on the website and this type of agreement is generally enforced." *TopstepTrader,* 2018 WL 1859040, at *3. Plaintiff here did not explicitly affirm acceptance of the ToU. "A 'browsewrap' agreement, on the other hand, is an agreement where users are bound to the website's terms by merely navigating or using the website; the user is not required to sign an electronic document or explicitly click an 'accept' or 'I agree' button." *Id.* The language in Shutterfly's 2014 ToU—"By visiting any of our Sites and Apps, you are signifying your assent to these Terms"—is the language of a prototypical browsewrap agreement.

"Courts enforce browsewrap agreements only when there is actual or constructive knowledge of terms." *CouponCabin, Inc. v. PriceTrace, LLC*, No. 18-cv-7525, 2019 WL 1572448, at *4 (N.D. Ill. Apr. 11, 2019) (citing *AlanRoss Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569, 2018 WL 3344364, at *5 (N.D. Ill. July 9, 2018) (internal quotes and citations omitted)). "When there is no evidence that users had actual knowledge of the terms at issue, the validity of a browsewrap contract hinges on whether a website provided reasonable notice of the terms of the contract, *i.e.*, whether users could have completed their purchases without ever having notice that their purchases are bound by the terms." *Id.*

The "term at issue" in this case from the 2014 ToU is the unilateral modification provision ("We may revise these Terms from time to time by posting a revised version. YOUR CONTINUED USE OF ANY OF THE SITES AND APPS AFTER WE POST ANY CHANGES WILL CONSTITUTE YOUR ACCEPTANCE OF SUCH CHANGES."). Even if Plaintiff assented to terms in the ToU governing her use of Shutterfly, she did not assent to unilateral modification of the ToU by Shutterfly. The Shutterfly website provided no notice that Plaintiff would be legally bound by the terms of the ToU if she clicked on "Accept." More specifically, Plaintiff had no actual knowledge or constructive knowledge of the unilateral modification

provision of the ToU. Plaintiff and other users could easily have completed their registrations without ever having notice that they would be bound by the terms of the ToU, including the unilateral modification provision. Thus, Plaintiff did not assent to the 2014 ToU and, specifically, did not assent to Shutterfly's right to unilaterally modify the ToU.[2]

**B.      Shutterfly's belatedly added arbitration clause is illusory and unenforceable.**

Arbitration clauses subject to unilateral modification, such as Shutterfly's, are illusory and, therefore, unenforceable if they purport to apply retroactively to pending disputes. *See Williams v. TCF Nat. Bank*, No. 12-cv-5115, 2013 WL 708123, at *10 (N.D. Ill. Feb. 26, 2013) (upholding a unilaterally modified arbitration clause where the contract "did not purport to render modifications retroactively applicable to already-pending disputes."). The *Williams* court cited with approval decisions from other jurisdictions in which courts "refused to enforce the clauses because there were no 'savings clauses which preclude[d] application of such amendments to disputes which arose ... before the amendment.'" *Id.* (*citing Morrison v. Amway*, 517 F.3d 248 (5th Cir. 2008) and *In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012)). The *Zappos* court explained that if retroactive modifications to arbitration clauses were permitted, "nothing would prevent [a company] from unilaterally changing the Terms and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest."[3] 893 F. Supp. 2d at 1066.

---

[2] For the same reasons, Shutterfly users who registered after the arbitration clause was added to the ToU would not be bound by that clause.

[3] If, notwithstanding the evidence that Plaintiff never assented to the ToU, the Court were to find that a contract was formed between the parties, the terms of the contract would be "governed by and construed in accordance with the laws of the State of California." Dkt. 23-2 at ¶ 19. Under California law, as under Illinois law, Shutterfly's arbitration clause would be unenforceable for multiple reasons. First, even where a contract permits unilateral modification, modifications made without notice violate the covenant of good faith and fair dealing. *See, e.g.*, *Cobb v. Ironwood Country Club* 233 Cal.App.4th 960, 965–968 (2015). In addition, California law prohibits the retroactive application of modifications of arbitration clauses to already-existing disputes. *See, e.g.*, *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 140 Cal.Rptr.3d 38 (2012). Finally, under California law, even if the arbitration clause is valid, Plaintiffs' cannot

### C. Plaintiff did not assent to Shutterfly's arbitration clause after it was added to the Terms of Use without notice to users.

Shutterfly's assertion that Plaintiff accepted Shutterfly's arbitration clause "by continuing to use the Shutterfly service after the clause was added" and "by making additional purchases of Shutterfly products after the clause was added" has no basis in logic or law. Plaintiff has never been notified of the addition of an arbitration clause to the ToU. Shutterfly does not even *claim* to have notified Plaintiff of the arbitration clause until it sent a misleading, improper, and ineffective email in September 2019 that it wrongly asserts gave users "notice of the clause." *See* Section I.D.1, below.

To form a valid contract under Illinois law, "there must be mutual assent, or a 'meeting of the minds,' as to the essential terms of the contract." *Westport Ins. Corp. v. Travelers Indem. Co.*, No. 16-cv-2286, 2019 WL 414715, at *3 (N.D. Ill. Feb. 1, 2019) (citations omitted). Plaintiff cannot have "assented" to Shutterfly's arbitration clause because Shutterfly never informed her of its existence.

None of the decisions cited by Shutterfly upheld an arbitration clause added to a contract where the plaintiff was given no notice of the clause. Shutterfly's reliance on these cases is disingenuous. In *Williams*, 2013 WL 708123, the court upheld an arbitration policy where the plaintiff physically signed an agreement that referred explicitly to the policy, was provided with a copy of the policy after signing, and had 30 days after receiving the policy to reject it. In *Sherman*, 2012 WL 1021823, the court upheld a revision to an arbitration policy where the company "provided notice to its customers by sending them an email containing information about the

---

waive their rights to class arbitration of their claim for an injunction prohibiting Shutterfly from continuing to collect face scans of Illinois residents notwithstanding the "class waiver" provision in the ToU. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017); *Blair v. Rent-a-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019). This likely explains Shutterfly's strategic decision to omit the California choice of law clause in its briefing.

revision, a link to the full text of the Terms and a reminder that '[b]y continuing to use the Service, you are agreeing' to the Terms.  The revision changed the dispute resolution provision only by changing the mailing address to where customers could send notices of their disputes." *Id*. at 1. *Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075, 1078, 799 N.E.2d 488, 491 (2003) upheld an arbitration clause that was added by a modification to a credit card agreement where the arbitration agreement itself was sent to cardholders with a cover page that "contained the following in large, bold-faced type. 'Important Notice Saks Fifth Avenue Credit Card Accounts Please Read This Notice Carefully.'" This was followed by a "Summary of Important New Terms" explaining the new arbitration provisions. This is what Shutterfly could have and should have done to alert users to its new arbitration clause. Instead, Shutterfly did nothing.[4] Plaintiff cannot have assented to an arbitration clause that Shutterfly failed to disclose to her.[5]

### D. Shutterfly's September 2019 email did not create a binding agreement to arbitrate this dispute.

In a desperate strategic "Hail Mary," after failing to notify users of the arbitration clause for four years, Shutterfly sent an email that it claims was "notice of the [arbitration] clause" in September 2019, three months after Plaintiff filed this class action and approximately eight weeks

---

[4] Not only did the plaintiffs receive express notice of the arbitration provision in every case cited by Shutterfly, but many of the cases are decided under the law of other states. *See, e.g.*, *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 793 N.E.2d 886 (2003) (applying Arizona law); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1304 (11th Cir. 2017) ("In Ohio, a consumer "of ordinary mind" is bound by an arbitration provision he has signed as long as he has had the opportunity to review it before assenting."); *see also Morgan v. Xerox Corp.*, No. 13-cv-409, 2013 WL 2151656 (E.D. Cal. May 16, 2013) ("Arbitration agreements which allow a party to prospectively modify the agreement *with notice* are enforceable and not illusory.") (emphasis added).

[5] Shutterfly cannot excuse its failure to notify users of the arbitration clause by claiming that users had a responsibility to monitor its website regularly for modifications to the ToU, because browsewrap agreements are unenforceable if users "could complete their purchases [or use the service] without ever having notice that their purchases are subject to the website's" terms of use. *See Van Tassell v. United Mktg. Group, LLC*, 795 F. Supp. 2d 770, 793 (N.D. Ill. 2011) (denying motion to compel arbitration where plaintiff's "failure to scour the website for the Conditions of Use she had no notice existed does not constitute assent.").

before filing thi s Motion to Compel Arbitration. Shutterfly's claim that Plaintiff accepted Shutterfly's arbitration clause by "choosing not to close her account" after receiving the email is erroneous for multiple reasons.

    1.   <u>Shutterfly's September 2019 email did not provide clear and conspicuous notice that an arbitration clause had been added to the ToU.</u>

First, the September 2019 email did *not* notify users that an arbitration clause had been added to the ToU. Indeed, rather than providing clear notice of the mandatory arbitration clause, the September 2019 email perpetuates Shutterfly's purposeful concealment of the arbitration clause from its users since 2015.

The first paragraph of the September 2019 email makes no reference to arbitration, stating only: "We're updating our Privacy Policy and Terms of Use, reflecting our ongoing commitment to be transparent about how we use your data and keep it safe." The second paragraph of the email says: "We invite you to read our policies in full, but here's a snapshot:" followed by four bullet points, none of which relate or refer to arbitration. Beneath the bullet point list, the email states: "We also updated our Terms of Use to clarify your legal rights in the event of a dispute and how disputes will be resolved in arbitration." The email then returns to the subject of privacy ("Keeping your data safe and maintaining transparency are important to us.") and makes no further mention of arbitration.

The passing reference to "clarifying … how disputes will be resolved in arbitration" cannot reasonably be said to provide notice that an entirely new arbitration clause had been *added* to the ToU. [6] *See, e.g.*, *Van Tassell*, 795 F. Supp. 2d at 792-93 (denying motion to compel arbitration

---

[6] Although the 2014 ToU included no arbitration clause, arbitration was mentioned in a section entitled "Class Action Waiver," which provided, in relevant part, "Any dispute resolution proceedings, whether in arbitration or court, will be conducted only on an individual basis and not in a class or representative action." Thus, the statement in the September 2019 email that the ToU had been updated "to clarify … *how disputes*

where clause only noticeable after a "multi-step process" of clicking through non-obvious links); *Sgourous*, 817 F.3d at 1035 (denying motion to compel arbitration where website "contained no clear statement that purchase was subject to any terms and conditions of sale" and actively misled the customer); *Hussein v. Coinabul, LLC*, No. 14-cv-5735, 2014 WL 7261240, at *3 (N.D. Ill. Dec. 19, 2014) (finding plaintiff lacked constructive notice of defendant's terms of service where terms were "hidden behind a hyperlink that is tucked away at the bottom of its website").

### 2. A unilaterally imposed arbitration clause cannot be applied retroactively to pending disputes.

Even if the September 2019 email is held to be sufficient notice of the arbitration clause so as to belatedly trigger Plaintiff's obligation to arbitrate disputes with Shutterfly, that clause cannot apply to Plaintiff's claims in this class action filed before the effective date of the modification. For the reasons discussed in Section I(B) above, courts uniformly reject unilateral modifications to arbitration clauses that puport to apply retroactively to pending disputes. *See, e.g.,Williams*, 2013 WL 708123 at *10 (upholding a unilaterally modified arbitration clause where the contract "did not purport to render modifications retroactively applicable to already-pending disputes.").[7] The *Williams* court cited with approval decisions from other jurisdictions in which courts "refused to enforce the clauses because there were no 'savings clauses which preclude[d] application of such amendments to disputes which arose ... before the amendment.'" *Id.* (citing *Morrison*, 517 F.3d 248 and *Zappos*, 893 F. Supp. 2d 1058. The *Zappos* court explained that if retroactive modifications to arbitration clauses were permitted, "nothing would prevent [a company] from unilaterally changing the Terms and making those changes applicable to that pending dispute if it

---

*will be resolved in arbitration*" could easily be read to refer to a clarification of the existing reference, not an entirely new section mandating arbitration.

[7] Shutterfly devotes a section of its brief to describing how its arbitration provision is "tailored for the needs of consumers." While this may be laudable where disputes are actually subject to arbitration, it is completely irrelevant to this Motion.

determined that arbitration was no longer in its interest." 893 F. Supp. 2d at 1066.

3.  <u>Plaintiff did not agree to the arbitration clause by failing to close her account in response to the September 2019 email</u>.

The September 2019 email stated: "If you do not contact us to close your account by October 1, 2019, or otherwise continue to use our websites and or mobile applications, you accept these updated terms." This provision directly contradicts the ToU, which provide that users accept Shutterfly's modifications of the ToU by "continued use of any of the sites and apps after we post changes," or "by ordering products or using services." Shutterfly did not amend the ToU to provide that account closure is required to avoid agreeing to modifications. The September 2019 letter is not a contract and the requirement of account closure did not bind Plaintiff.[8]

4.  <u>Shutterfly's September 2019 email was a coercive and misleading *ex parte* communication that cannot deprive Plaintiff of her right to proceed in this Court</u>.

As of June 11, 2019, Plaintiff was represented by counsel and a party to this class action, and other Shutterfly users were putative class members. Yet, without even notifying Plaintiffs' counsel, Shutterfly sent an email directly to Plaintiff and other users in September 2019 that was clearly intended to affect the rights of Plaintiff and putative class members to pursue this pending action. The September 2019 email was coercive and misleading in that it failed to clearly inform users of the arbitration clause Shutterfly had added to the ToU, and also failed to inform putative class members of the existence of this litigation or that their "acceptance" of the arbitration clause would affect their rights as potential plaintiffs or class members.

The Supreme Court has long recognized that because "of the potential for abuse, a

---

[8] Even if Shutterfly's "acceptance by inaction" clause did not contradict its own ToU, the provision would be impermissible and unenforceable. Under Illinois law, "an offeror may construe silence as acceptance of an offer, as required for contract formation, *if the circumstances make it reasonable to do so*." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713 (7th Cir. 2019). The circumstances here are far from reasonable. Moreover, any possible effect of the September 2019 email would depend on whether and when it was opened by recipients. Whether Shutterfly has valid "read receipts" for the email would be an issue of fact.

district court has both the duty and the broad authority to exercise control over a class action and enter appropriate orders governing the conduct of counsel and parties. As Plaintiff correctly notes, courts have repeatedly used this authority to bar or invalidate class action waivers and arbitration clauses procured from potential class members who were not provided adequate notice of the pending action. *See, e.g., Piekarsi v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (court invalidated an arbitration agreement sent to putative class members and required defendant to send out a corrective notice); *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (communication of an arbitration agreement to putative class members held misleading where defendant omitted the "critical information," including that there was ongoing litigation and that "by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs").

*Brodsky v. HumanaDental Ins. Co.*, No. 1:10-cv-3233, 2016 WL 5476233, at *12 (N.D. Ill. Sept. 29, 2016).[9]

## II.    A DISPUTE OVER THE EXISTENCE OF AN AGREEMENT TO ARBITRATE IS TO BE DECIDED BY THE COURT, NOT AN ARBITRATOR.

Shutterfly asserts that "[t]o the extent that Ms. Miracle-Pond denies that her arbitration agreement either is enforceable or encompasses her claims in this lawsuit, that dispute must be resolved by the arbitrator," relying on the "delegation clause" in Shutterfly's non-existent arbitration clause, which states: "All issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this arbitration agreement." (Memo at 12.) Shutterfly's request that this Court outsource its motion to compel arbitration to an arbitrator should be rejected out of hand. Plaintiff is not claiming that "her arbitration agreement" is unenforceable or inapplicable; she categorically denies that any arbitration agreement *exists at all.*

According to the United States Supreme Court, it is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co.*

---

[9] Plaintiffs and Shutterfly are presently conferring to determine whether agreement can be reached on appropriate remedial measures to be taken by Shutterfly, if any, to address the impact of the September 2019 email. If no agreement is reached, Plaintiffs intend to move this Court for an order requiring Shutterfly to send out a corrective notice and other appropriate remedial measures. At a minimum, this Court should find that Plaintiff did not accept Shutterfly's arbitration clause as a result of any action or inaction by her or the company after her receipt of the September 2019 email.

*v. International Brotherhood of Teamsters,* 561 U.S. 287, 296-97 (2010).

> [O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, the court must resolve the disagreement (internal quotation marks and citations omitted).

*Id*. at 299–300. Reviewing *Granite Rock*, the Seventh Circuit clarified that "it is the court and not the arbitrator that 'must decide whether a contract exists before it decides whether to stay an action and order arbitration.'" *Mohammed v. Uber Techs., Inc*., 237 F. Supp. 3d 719, 728 (N.D. Ill. 2017) (quoting *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010)). The Seventh Circuit confirmed that "the question whether the court or an arbitrator is responsible for deciding whether a particular document that the parties signed qualifies as a contract, and if so, whether that contract includes an arbitration clause." *Id*. The Court need proceed no further to dispatch Shutterfly's argument that its motion to compel arbitration should be referred to an arbitrator based on the "delegation clause" to which Plaintiff never agreed.

Under *Granite Rock*, *Mohammed*, and similar cases, the existence or wording of a "delegation clause" is irrelevant where, as here, the very formation of a contract is at issue. The cases Shutterfly cites do not hold otherwise.[10] The issues raised by Shutterfly's Motion to Compel concern contract formation and should be decided by this Court.

---

[10] In both *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019), the existence of the relevant contract was not in dispute. The issue in *Jackson* was the alleged unconscionability of the agreement; in *Henry Schein* the issue was whether the arbitration clause covered an antitrust claim. Further, Shutterfly misleads when it avers that its delegation clause "is substantively identical to the one that the Supreme Court enforced in *Jackson*." The delegation clause in *Jackson* granted the arbitrator exclusive authority to resolve any dispute relating to "formation." Shutterfly's delegation clause (which is, in any event, of no force or effect because there is no contract) does not. Further, the wording of the delegation clause in the AAA arbitration rules (*see* Memo at 13 n.4) is irrelevant because Shutterfly's arbitration clause incorporates AAA rules "as modified by this Agreement," which contains its own delegation clause.

## **CONCLUSION**

There is no binding agreement to arbitrate this dispute. Shutterfly's motion should be denied.

DATED: November 8, 2019        Respectfully submitted,

By: */s/ Henry J. Kelston*

AHDOOT & WOLFSON, PC
Tina Wolfson (*pro hac vice*)
*twolfson@ahdootwolfson.com*
Henry J. Kelston
*hkelston@ahdootwolfson.com*
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111

CAREY RODRIGUEZ MILIAN
GONYA, LLP
David P. Milian (*pro hac vice*)
*dmilian@careyrodriguez.com*
1395 Brickell Ave. Suite 700
Miami, FL 33131
Tel: (305) 372-7474

CARLSON LYNCH, LLP
Katrina Carroll
*kcarroll@carlsonlynch.com*
111 West Washington Street, Suite 1240
Chicago, IL 60602
Tel: (312) 750-1265

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2019, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** to be served upon counsel of record for Defendant in accordance with Fed. R. Civ. P. 5(b)(2) and Local Rule 5.3(a)(1).

By: */s/ Henry J. Kelston*
Henry J. Kelston

AHDOOT & WOLFSON, PC
*hkelston@ahdootwolfson.com*
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111