UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| VERNITA MIRACLE-POND and SAMANTHA PARAF, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHUTTERFLY, INC.,<br><br>Defendant. | Civil Action No. 1:19-cv-4722<br><br>District Judge Mary M. Rowland |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CURATIVE MEASURES TO REMEDIATE EFFECTS OF DEFENDANT'S IMPROPER COMMUNICATONS WITH PLAINTIFF AND PUTATIVE CLASS MEMBERS**

I.  **INTRODUCTION**

Plaintiff Miracle-Pond seeks curative measures to remediate the impact of Shutterfly's September 2019 Email to its users. Plaintiff's Motion ("Pl. Mot."), Dkt. 38. In opposing Plaintiff's Motion, Shutterfly grossly mischaracterizes both the content and intended effect of the September 2019 Email, claiming that it merely contained "minor updates" to the arbitration clause that had been in Shutterfly's Terms of Use ("ToU") since 2015. In fact, the September 2019 Email purported to *bind* recipients to Shutterfly's 2019 Terms of Use, including the amended arbitration clause, if they did not close their Shutterfly accounts by October 1, 2019, or if they continued to use the Shutterfly websites or mobile apps. This was no "minor update."

Shutterfly's Opposition is premised entirely on the improper and inaccurate presumption that Shutterfly users who, like Ms. Miracle-Pond, signed up before the arbitration clause was added in 2015, were bound by that clause *before* the September 2019 Email was sent. Shutterfly's presumption is wrong for multiple reasons, including that Ms. Miracle-Pond did not assent to Shutterfly's ToU when she signed up in 2014, Shutterfly failed to notify its users of the arbitration provision inserted in 2015 until it sent the September 2019 Email, and the added arbitration provision itself is illusory and unenforceable, all as more fully set forth in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration (Dkt. 37).

Indeed, Shutterfly itself, in support of its Motion to Compel Arbitration (Dkt. 21), argued that that Ms. Miracle-Pond "*accepted Shutterfly's arbitration clause* . . . by choosing not to close her account after receiving [the September] email notice of the clause." Dkt. 21 at 10. Thus, Shutterfly admitted that, while this action was pending in federal court, it sent an *ex parte* communication to Plaintiff Miracle-Pond and putative class members that—according to Shutterfly—resulted in class members forfeiting their legal right to pursue this action without even being informed of the existence of the action. Shutterfly's attempt to have it both ways—that the September 2019 Email resulted in Ms. Miracle-Pond agreeing to the arbitration clause but, also, that the Email merely contained "minor updates" to the arbitration clause—is disingenuous, at best.

Shutterfly's other arguments in opposition to curative measures are equally unavailing. The September 2019 Email was patently misleading, and is exactly the type of improper communication that routinely impels courts to order curative measures. The requested measures are not "drastic" but are narrowly drawn and responsibly tailored to address the harms resulting from Shutterfly's improper communication without impinging on Shutterfly's normal course of business. Finally, Plaintiff does not need to show that the class is certifiable as Shutterfly contends; such a rule would put the cart far before the horse and would undermine the goals and policies underlying Federal Rule of Civil Procedure 23. Even if certifiability were a relevant criterion—and it is not—there is no reason for the Court to conclude that a class will not be certified in this case.

Plaintiff's Motion for Curative Measures should be granted.

## II. ARGUMENT

### A. Shutterfly's September 2019 Email to Users Was Improper, Deceptive and Misleading.

"[T]o protect the integrity of the class and the administration of justice generally," a court's authority under Rule 23(d) extends to "communications that mislead or otherwise threaten to influence the threshold decision whether to remain in the class," as well as to those that "seek or threaten to influence [one's] choice of remedies." *See In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). The Court's authority under Rule 23(d) is not strictly limited as Shutterfly represents it to be. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

#### 1. The September 2019 Email Purported to Impose an Arbitration Agreement on Putative Class Members.

Shutterfly concedes that the Court has authority to nullify "arbitration clauses executed *after* a class action is filed," but argues that this is not such a case. Shutterfly's Opposition ("Opp."), Dkt. 47 at 6 (emphasis in original). Rather, Shutterfly asserts, "Shutterfly's Terms required individual arbitration over four years before this action began," *id.* at 8, and the

3

September 2019 Email was nothing but a "minor update" to the preexisting arbitration agreement. Thus, Shutterfly's opposition to Plaintiff's Motion for Curative Measures relies on the presumption that Plaintiff was bound by the arbitration clause unilaterally inserted by Shutterfly in the ToU in 2015, a presumption that is both contrary to law and contradicted by Shutterfly's own prior statements.[1]

Prior to 2015, Shutterfly's ToU contained no arbitration provision. Shutterfly admits that more than half of its current active users signed up before the addition of the arbitration clause. Opp. at 4. Shutterfly claims that those users are bound by an arbitration provision Shutterfly added to its ToU in 2015 pursuant to a "unilateral modification" clause in the pre-2015 ToU. But those users did *not* assent to the 2014 ToU, which were in the form of a "browsewrap" agreement and, specifically, did not assent to the unilateral modification clause. *See* Dkt. 37 at 6-8.[2]

Further, Shutterfly does not even claim to have notified those users of the arbitration provision inserted in the ToU until September 2019, four years after the clause was added and three months after this class action was filed. Neither Plaintiff nor other Shutterfly users can be found to have assented to an arbitration clause about which they were never informed. *See* Dkt. 37 at 9-10.

> Shutterfly argues in its Opposition:
>
> Shutterfly users have accepted this arbitration clause *in one of two ways*. Users who (like Ms. Miracle-Pond) signed up for Shutterfly before the addition of the clause in May 2015 accepted it by continuing to use the service or by making purchases after the amended Terms were posted online pursuant to the change-in-terms provision. Dkt. 21, at 7-11.

Opp. at 3 (emphasis added).

---

[1] Shutterfly's arguments regarding the substance of the amendments to its arbitration clause—*e.g.*, "[N]one of the 2019 changes to Shutterfly's clause either expanded the scope of the clause or added a class waiver"—are completely irrelevant. Plaintiff's Motion for Curative Measures is not based in any way on the content of the amendments, but on the content of the Email itself, with which Shutterfly purported to induce class members to forfeit their rights in this action without even informing class members of the existence of the action, or that they might be waiving their rights in this action if they did not close their accounts by October 1, 2019 or continued using the Shutterfly website.

[2] For similar reasons, Plaintiff claims that users who signed up after 2015 did not assent to the arbitration clause. *Id.*

Here, Shutterfly attempts to mislead the Court regarding its previously stated position in the very section it cites, where it argued:

> Ms. Miracle-Pond thus accepted Shutterfly's arbitration clause in each of *three independently sufficient ways*: by continuing to use the Shutterfly service after the clause was added; by making additional purchases of Shutterfly products after the clause was added; *and by choosing not to close her account after receiving [the September 2019] email notice of the clause*.

Dkt. 21 at 10 (emphasis added). Even more explicitly, Shutterfly claimed that Ms. Miracle-Pond agreed to Shutterfly's arbitration clause when she "opened [the Shutterfly] email on September 8, 2019, but did not close her Shutterfly account" as the letter instructed. *Id*.

Shutterfly's present argument that the September 2019 Email was nothing but a "minor update" to an existing arbitration agreement, after explicitly claiming that Ms. Miracle-Pond *agreed to* the arbitration clause by opening the Email, should be rejected out of hand.

### 2. The September 2019 Email Sent By Shutterfly Was Deceptive and Misleading.

The September 2019 Email was deceptive and misleading because it did not give class members reasonable notice that, as result of opening the Email, they would become bound to Shutterfly's mandatory arbitration clause if they did not stop using Shutterfly immediately and close their accounts by October 1, 2019. *See* Dkt. 21 at 10 ("Ms. Miracle-Pond thus accepted Shutterfly's arbitration clause … by choosing not to close her account after receiving [the September 2019] email[.]") The Email barely mentioned arbitration at all, and then only to say Shutterfly "updated our Terms of Use to clarify your legal rights in the event of a dispute and how disputes will be resolved in arbitration." Pl. Mot, Ex. A.

The September 2019 Email was also deceptive and misleading because it failed to notify class members that if they did not stop using Shutterfly immediately and close their accounts by October 1, 2019, they would forfeit their right to participate in this pending class action, and failed to even notify class members of the existence of the action, let alone provide contact information for Plaintiff's counsel.

Shutterfly claims that the obscure reference to arbitration was not misleading because "the changes to the arbitration clause were modest." Opp. at 11. Again, this is Shutterfly apparently failing to grasp the basis of Plaintiff's complaint about the September 2019 Email. The buried reference to arbitration in the Email was deceptive and misleading not because of the substance of the revisions, but because Shutterfly sent the Email with the intention to bind recipients to the arbitration clause and cause them to unknowingly waive their rights as class members in this action.

Shutterfly contends that, under *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981), fn 16, Plaintiff's claims regarding the misleading nature of the Email are conclusory. Opp. at 11. Not so. *Gulf Oil* held that attacks on communications to putative class members must be based on a particular and specific demonstration of fact. *See Gulf Oil Co.*, 452 U.S. at 102, fn 16. That is precisely what Plaintiff has done here by showing exactly how the Email buried even the minimal reference to arbitration and failed entirely to inform recipients about the existence of this class action.

The September 2019 Email primarily focused on changes to Shutterfly's privacy policy, starting with the headline: "We're updating our Privacy Policy and Terms of Use, reflecting our ongoing commitment to be transparent about how we use your data and keep it safe." Pl. Mot., Ex. A. No reference to arbitration is made until late in the Email, and then is limited to a single, uninformative sentence about a "clarif[ication] of your legal rights." *Id*. Thus, even the most discerning reader would not suspect that their legal rights as class members in this action would be extinguished by the Email.

Shutterfly also argues that referencing this litigation or providing contact information for Plaintiff's counsel would have rendered the Email "confusing" because "(1) most recipients are not putative members of this Illinois-only class, and (2) the Illinois recipients are bound by the 2015 arbitration agreement in any event." Opp. at 11. Neither excuse is persuasive. As to the first point, Shutterfly does not claim that it is unable to determine the location from which photos were uploaded to the site, using IP addresses or similar data; and, in any event, the Email could

6

have included a "Notice to Shutterfly Users in Illinois." On the second point, Shutterfly's unilateral (and likely incorrect) determination that all Illinois residents are bound by the 2015 arbitration agreement is not a basis for failing to inform Illinois recipients of the September 2019 Email about a class action that challenges that very premise.

Indeed, courts routinely find that information about a pending case is required (*i.e.*, not confusing) in communications that may affect the recipients' rights in the litigation. *See Cheverez v. Plains All Am. Pipeline, LP*, No. 15-cv-4113, 2016 WL 861107, at *4 (C.D. Cal. Mar. 3, 2016) ("Although the Second Release notifies victims that a consolidated class action exists, it does not provide additional information, such as . . . the contact information for Plaintiffs' counsel."); *Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. 2014) (striking pre-certification waivers of participation where "key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint" was missing); *County of Santa Clara v. Astra USA, Inc.*, No. 05-cv-3740, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (invalidating release under Rule 23, because, "[w]hile there were not any alleged misstatements," it "omit[ted] a summary of the plaintiffs' complaint," and "it did not even provide an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information, or the current status of the case").

Shutterfly's reliance on *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893 (N.D. Ill. 2013), Opp. at 12, is misplaced; in fact, *Reid* strongly supports Plaintiff's position here. *Reid* held that defendant had not engaged in coercive litigation tactics by making settlement offers to individual plaintiffs; the case did not involve a defendant sending arbitration agreements to putative class members. Moreover, although the *Reid* plaintiffs contended that defendant had "failed to mention the class action" in its communications with potential class members, in fact all of defendants communications had "disclosed the existence of the instant action and [] included the case name, the court in which it is pending, and the case number." *Id.* at 929. As the *Reid* court noted, "Courts have found abusive litigation tactics to exist where the opposing party's communications simply fail to mention the class actions, resulting in the potential for unknowing waivers by the potential class members due to a lack of information." *Id*. This is precisely what Shutterfly did here; its

7

failure to mention the class action in the September 2019 Email clearly resulted in the potential for unknowing waivers by class members due to a lack of information. Shutterfly's abusive litigation tactic requires curative measures.

### 3. Shutterfly's September 2019 Email Was Not "In The Ordinary Course of Business."

Plaintiff does not dispute that Shutterfly is generally allowed to communicate with putative class members "in the ordinary course of business," or that it is permitted to periodically update its ToU. Opp. at 9-11. But it was not in the ordinary course of business, and was not simply an update of its ToU, when Shutterfly sent the September 2019 Email purporting to bind proposed class members in a pending Federal court case to an arbitration provision without disclosing adequate (or, in this case, *any*) information about that litigation. That is why "courts have repeatedly used th[eir] authority to bar or invalidate class action waivers and arbitration clauses procured from potential class members who were not provided adequate notice of the pending action." *Brodsky v. HumanaDental Ins. Co.*, No. 10-cv-3233, 2016 WL 5476233, at *12 (N.D. Ill. Sept. 29, 2016), *class decertified on other grounds*, 269 F. Supp. 3d 841 (N.D. Ill. 2017).

Shutterfly has provided no legal authority for the proposition that its September 2019 Email should be regarded as "in the ordinary course of business." Instead, Shutterfly cites two cases for the proposition that the 2019 arbitration agreement should not be automatically disregarded solely because it was sent after the start of the litigation, which is not the basis of Plaintiff's claim here.[3] Opp. at 10. In *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2014 WL 3519184, at *1 (N.D. Ga. July 15, 2014), the individual plaintiff, a potential participant in an FLSA collective action, sought to invalidate an arbitration agreement she personally signed while the collective action was pending. Unlike here, there was no allegation that the arbitration agreement was in any way deceptive or misleading. In addition, a potential participant who has not yet joined an opt-in

---

[3] Shutterfly also cites *In re FedEx Ground Package Sys., Inc. Emp't Prac. Litig.*, 2007 WL 3036891 at *8 (N.D. Ind. Oct. 12, 2007), which does not involve arbitration at all and is wholly inapposite.

class has no legal status as a member of the class, whereas Rule 23(d) empowers the court at any point after the filing of a class action to enjoin a defendant's communications with absent class members and to correct the effect of prior prejudicial communications. *See, e.g., O'Connor v. Uber Techs., Inc.*, No. 13-cv- 3826, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013).

*Gauzza v. Prospect Med. Holdings, Inc*., No. CV 17-3599, 2018 WL 4853294, at *2 (E.D. Pa. Oct. 4, 2018), involved the defendant's continuation of a pre-existing practice of requiring all new hires to sign arbitration agreements after an FLSA collective action was filed. The court observed that "nothing Plaintiffs cite stands for the broad proposition that arbitration agreements entered during the course of litigation are never permissible; rather, they become impermissible when some additional fact makes them confusing, misleading, coercive, or otherwise inappropriate." *Id.* at n.1. In the present case, the arbitration agreement purportedly arising from the September 2019 Email is unenforceable not solely because of its timing (during the course of litigation), but also due to the confusing and misleading manner in which it was obtained and its failure to notify recipients about the pending class action. *See Balasanyan v. Nordstrom, Inc*., No. 11-cv-2609, 2012 WL 760566, at *3 (S.D. Cal. Mar. 8, 2012) (invalidating an arbitration agreement because of the post-filing timing and because the defendant "did not alert putative class members of the litigation.").[4] Holding confusing and misleading communications affecting the legal rights of absent class members, such as Shutterfly's September 2019 Email, to be permissible as "in the ordinary course of business" would thoroughly eviscerate the protections provided by Rule 23(d) and well-established case law.

### B. It is Well Within the Court's Authority to Order the Curative Measures Plaintiff Seeks.

The Court has broad discretion under Rule 23(d) fashion remedies for "communications that mislead or otherwise threaten to influence the threshold decision whether to remain in the class," as well as to those that "seek or threaten to influence [one's] choice of remedies." *In re*

---

[4] The purported 2019 arbitration agreement is also illusory and unenforceable because Shutterfly is improper asserts that the agreement applies retroactively to the disputes raised in Plaintiff's complaint filed three months before the Email was sent. *See* Dkt. 37 at 12.

*Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). Shutterfly argues that the Court may not order curative measures under Rule 23(d) unless it finds that the putative class is likely to be certified, and that the specific measures that Plaintiff proposes are unwarranted in this case. Shutterfly is wrong on both counts.

### 1. There Is No Requirement That A Class Be Shown to Be "Certifiable" For A Court to Order Curative Measures.

According to Shutterfly, a Rule 23(d) order granting Plaintiff's proposed curative measures "is likely to be an abuse of discretion" unless the Court first finds that "the putative class has been or imminently will be certified." Opp at. 12. There is simply no legal authority for this outlandish proposition. The cases cited by Shutterfly are not remotely relevant to the present case.

In *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999 (11th Cir. 1997), plaintiffs in two consolidated race discrimination cases received permission from the District Court to conduct a national publicity campaign to identify and solicit information from potential class members, and to communicate with defendant's current and former employees through mass-mailings. The Eleventh Circuit Court of Appeals ordered the District Court to vacate the order, holding that "[t]he advertisements and mass mailings allowed by the order at issue in the instant petition are nationwide in scope and are surely causing serious and irreparable harm to Motel 6's reputation and to its relationship with its employees." *Id.* at 1004. Thus, the issue in *Jackson* was whether the court should *allow* plaintiffs to communicate with putative class members in a manner that caused substantial harm to the defendant. Rule 23(d) was not implicated. The issue before the Court on Plaintiff's Motion here is the exact opposite, *i.e.*, whether to *require* Shutterfly to remediate the damaging effects of past communications, a decision squarely within the Court's authority under Rule 23(d) without any precondition regarding the certifiability of the putative class.

Shutterfly's second case, *Friedman v. Intervet Inc.,* 730 F. Supp. 2d 758, 767 (N.D. Ohio 2010) actually supports Plaintiff's request for curative measures here. The defendant in *Friedman*, a supplier of pharmaceuticals for pets, was obtaining releases from individual plaintiffs without

10

disclosing the pendency of a class action in which the individuals were potential class members. Plaintiff sought curative measures in the form of an order requiring defendant "to inform any prospective class members that defendant contacts that this lawsuit has been filed, and to provide them the contact information for plaintiff's counsel." *Id.* at 762. Despite recognizing that the likelihood of class certification in pharmaceutical cases is low, the court held that "defendant's failure to notify putative class members of this litigation before obtaining settlements and releases from them … constituted a misleading communication meriting action" by the court. *Id*. at 765-66. The court ordered defendant to notify individuals from whom it had received releases in the past, and those from whom it would seek releases in the future, about the pending class action and the impact of the release on the individual's right to participate in the case. *Id.* at 766.

Shutterfly provides no legal authority for its claim that, before ordering curative measures to remedy the effects of Shutterfly's improper and misleading September 2019 Email, the Court must find that Plaintiff's proposed class is certifiable. There is no such authority. Indeed, courts routinely order curative measures under Rule 23(d) without requiring the showing that Shutterfly says is required. *See, e.g., Brodsky*, 2016 WL 5476233, at 12 ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.... [C]ourts have repeatedly used this authority to bar or invalidate class action waivers and arbitration clauses procured from *potential class members* who were not provided adequate notice of the pending action.") (emphasis added).

Shutterfly's attempt to distract from the issue before the Court—whether curative measures are warranted here and, if so, what measures are appropriate—and turn this proceeding into an extremely premature argument about class certification, has no basis in law and should be rejected by the Court.[5]

---

[5] Even if the "certifiability" of a class were considered a precondition for curative measures, Plaintiff would easily make such a showing. The predominant question in this case will be whether Shutterfly violated the Illinois Biometric Information Privacy Act by employing "facial recognition" on photographs uploaded to the Shutterfly website. Any issues that may arise relating to the different periods in which class members signed up, or which users may be bound by

11

## 2. Plaintiff's Proposed Curative Measures Are Warranted.

Plaintiff's proposed measures have been carefully drawn to remedy Shutterfly's improper communications with putative class members. Plaintiff responds to Shutterfly's criticism of the proposed measures as follows:

1. Re: Request for Relief No. 6: Plaintiff does not seek curative measures affecting any non-members of the putative class. Plaintiff seeks to nullify changes in Shutterfly's Terms of Use since the inception of this Action the confusing and misleading September 2019 Email was the vehicle by which Shutterfly communicated those changes and purportedly gained consent to the changes.

2. Re: Request for Relief No. 5: Relief from the arbitration agreement purportedly arising from the September 2019 Email need not be limited to Plaintiff's BIPA claims. If the Court finds that the Email was improper, it is well within its purview to invalidate the arbitration agreement in its entirety and issue curative notice to correct a parties' abusive conduct. *See Piekarsi v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (court invalidated an arbitration agreement sent to putative class members and required defendant to send out a corrective notice).[6]

---

arbitration clause, will not prevent class certification. "[T]hat some of the class members claims may be affected by arbitration agreements does not make class certification inappropriate…. Courts dealing with this same issue have proceeded to certify a class while "reserv[ing] the right to create subclasses or exclude members from the class at a later juncture." *Herman v. Seaworld Parks & Entm't, Inc.,* 320 F.R.D. 271, 288–89 (M.D. Fla. 2017).

[6] Shutterfly's argument that Rule 23(d) does not give the Court power to nullify an arbitration agreement entered into prior to the filing of a class action complaint is a red herring. The Court has the power under Rule 23(d) to nullify any arbitration agreement that Shutterfly claims arose from the September 2019 Email, after this case was filed. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 258 (S.D.N.Y. 2005) ("Indeed, when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization."). Quite separately, the Court has the power to nullify the 2015 arbitration agreement if it finds that there was a lack of mutual assent. *See Westport Ins. Corp. v. Travelers Indem. Co.*, No. 16 C 2286, 2019 WL 414715, at *3 (N.D. Ill. Feb. 1, 2019) ("In addition, there must be mutual assent, or a 'meeting of the minds,' as to the essential terms of the contract.") (citation omitted). However, the question of the validity of the 2015 arbitration agreement is completely irrelevant to Plaintiff's request for curative measures related to Shutterfly's 2019 conduct.

3. Re: Request for Relief No. 3: Plaintiff's demand that Shutterfly disclose in advance any proposed future communications with class members would not halt Shutterfly's operations. Plaintiff is willing to agree to object to any proposed communication within 48 hours, and to meet and confer regarding possible categories of communications to be exempted from this requirement.

4. Re: Request for Relief No. 7: Curative notice to putative class members is not premature. Courts unquestionably have authority under Rule 23(d)(1) to order corrective notice to potential class members. *See infra* at section B(1).[7]

5. Re: Request for Relief No. 4: Plaintiff's request to have the existence and the status of this litigation disclosed to putative class members in relevant communications with putative class members merely seeks to have Shutterfly do that which it was already required (but failed) to do under prevailing law. Including Plaintiff's counsel's contact information allows putative class members to obtain more information if they wish in order to make an informed decision as to whether to accept the arbitration clause and waive their rights to litigate this case. Pl. Mot. at 12. This is not a marketing campaign, but a remedy to Shutterfly's improper communications. And it does not infringe on any First Amendment rights because Shutterfly is still allowed to fully communicate with putative class members, as long as it does so properly.

6. Re: Request for Relief No. 8: The contact information of putative class members is important for purposes of identification and notification. The other information sought, including whether putative class members received or opened the September 2019 Email, any responses to the email from putative class members, and a list of all putative class members who closed their accounts after receiving the Email, similarly

---

[7] *Van v. Ford Motor Co.*, No. 14-CV-8708, 2018 WL 6649603, at *5 (N.D. Ill. Dec. 19, 2018), cited by Shutterfly, does not hold otherwise. The *Van* court held that pre-certification notice to putative class members falls "squarely within the scope of subsection (i) of Rule 23(d)(1)(B) when it concerns a 'step in the action.'" The curative measures proposed here concern a "step" in the class action, that is, class members' possible forfeiture of their rights as class members as a result of the September 2019 Email.

13

seeks to identify any putative class members that were adversely affected in particular ways by Shutterfly's improper communication so that appropriate remedies may be fashioned.

Shutterfly does not dispute the appropriateness of Plaintiff's Requests for Relief Nos. 1 or 2.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Motion be granted.

DATED: January 30, 2020

Respectfully submitted,

By: /s/ Henry J. Kelston
  Henry J. Kelston

AHDOOT & WOLFSON, PC
Tina Wolfson (*pro hac vice*)
*twolfson@ahdootwolfson.com*
Henry J. Kelston
*hkelston@ahdootwolfson.com*
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111

CARLSON LYNCH, LLP
Katrina Carroll
*kcarroll@carlsonlynch.com*
111 West Washington Street, Suite 1240
Chicago, IL 60602
Tel: (312) 750-1265

CAREY RODRIGUEZ MILIAN GONYA, LLP
David P. Milian (*pro hac vice*)
*dmilian@careyrodriguez.com*
1395 Brickell Ave. Suite 700
Miami, FL 33131
Tel: (305) 372-7474

*Attorneys for Plaintiffs*

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 30, 2020, I caused a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CURATIVE MEASURES TO REMEDIATE EFFECTS OF DEFENDANT'S IMPROPER COMMUNICATONS WITH PLAINTIFF AND PUTATIVE CLASS MEMBERS** to be served upon counsel of record for Defendant in accordance with Fed. R. Civ. P. 5(b)(2) and Local Rule 5.3(a)(1).

      By: */s/ Henry J. Kelston*
           Henry J. Kelston

      AHDOOT & WOLFSON, PC
      *hkelston@ahdootwolfson.com*
      10728 Lindbrook Drive
      Los Angeles, CA 90024
      Tel: (310) 474-9111